UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHEAST ORGANIC FARMING ASSOCIATION OF NEW YORK, NATURAL RESOURCES DEFENSE COUNCIL, and ENVIRONMENTAL WORKING GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE,<br><br>Defendant. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This lawsuit challenges the U.S. Department of Agriculture's unlawful purge of climate-related policies, guides, datasets, and resources from its websites, without any advance notice as required by the Paperwork Reduction Act, without engaging in reasoned decision-making as required by the Administrative Procedure Act, and in violation of its obligation under the Freedom of Information Act to publish certain information proactively.

2. On January 30, 2025, the U.S. Department of Agriculture ("USDA") ordered its staff to "identify and archive or unpublish any landing pages focused on climate change." Within hours, and without any public notice or explanation, USDA purged its websites of vital resources about climate-smart agriculture, forest conservation, climate change adaptation, and investment in clean energy projects in rural America, among many other subjects. In doing so, it disabled access to numerous datasets, interactive tools, and essential information about USDA programs and policies.

3. USDA's purge of climate-change-focused webpages has already inflicted significant harm. By removing these webpages or rendering them inaccessible, USDA has hurt farmers and farm advisors who depend on the department's digital resources to access financial and technical support for conservation practices and other agricultural decisions, researchers who depend on USDA datasets and interactive tools to study climate change and its related risks, and advocates whose mission is to educate farmers and the public about USDA programs and policies.[1]

4. USDA has deprived the public of this vital information at an especially critical moment. In recent days, and in violation of multiple court orders, the Trump Administration has stopped paying farmers, nonprofit organizations, and businesses money they were promised under USDA conservation and climate-smart agriculture programs, pulling the rug out from underneath grant recipients who have invested significant time, money, and effort implementing practices that help them mitigate and manage the effects of climate change. USDA's webpage purge has removed critical information about these programs from the public record, denying farmers access to resources they need to advocate for funds they are owed and for the continued survival of programs on which they rely.

5. USDA's purge of climate-change-focused webpages is unlawful in at least three ways. First, USDA provided no notice before removing scores of vitally important webpages, thus violating the Paperwork Reduction Act of 1995 ("PRA"), which requires federal agencies to provide adequate notice when substantially modifying or terminating "significant information dissemination products." Second, in ordering staff to unpublish these webpages, USDA failed to

---

[1] By "remove," Plaintiffs mean that USDA stopped publishing the webpage altogether. By "render inaccessible," Plaintiffs mean that USDA still publishes the page, but it is impossible to navigate to from USDA's websites either because USDA has removed the landing page that indexed the webpage or because it removed the link to the webpage from the landing page.

consider how removing these resources would harm farmers, farm advisors, land managers, researchers, and other members of the public, and thus failed to engage in reasoned decision-making, in violation of the Administrative Procedure Act ("APA"). Finally, by removing or rendering inaccessible numerous records that USDA is obligated to affirmatively disclose to the public in an electronic format, USDA violated the Freedom of Information Act ("FOIA"). Accordingly, this lawsuit seeks an order declaring USDA's actions unlawful, setting them aside, requiring USDA to restore the unlawfully removed webpages, and enjoining USDA from unlawfully removing additional webpages on the basis of the department's January 30, 2025, directive.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely, FOIA, 5 U.S.C. § 552(a)(4)(B), and the APA, 5 U.S.C. §§ 702, 706.

7. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(C) and 5 U.S.C. § 552(a)(4)(B) because Plaintiff Natural Resources Defense Council resides in New York, New York.

## PARTIES

8. Plaintiff Northeast Organic Farming Association of New York ("NOFA-NY") is a 501(c)(3) nonprofit organization of farmers, gardeners, and consumers working together to create a sustainable regional food system that is ecologically sound, socially just, and economically viable. Through demonstration and education, NOFA-NY promotes land stewardship, organic food production, and local marketing. NOFA-NY is New York's leading organization providing effective programs and services that promote sustainable, local, organic food and farming. NOFA-NY is based in Binghamton, New York.

9. Plaintiff Natural Resources Defense Council ("NRDC") is a 501(c)(3) nonprofit environmental and public health organization with several hundred thousand members. NRDC engages in research, advocacy, media, and litigation related to protecting public health and the environment, including with respect to food, agriculture, and forestry. To this end, NRDC advocates for building a more resilient food system that protects the health of communities, soils, and ecosystems while helping farmers and ranchers adapt to the realities of climate change. NRDC also works to ensure protections for carbon-rich forests, including by advancing federal policies to protect old-growth and mature forests. NRDC is based in New York, New York.

10. Plaintiff Environmental Working Group ("EWG") is a 501(c)(3) nonprofit public-interest organization whose mission is to empower the public with breakthrough research to make informed choices and live a healthy life in a healthy environment. Since 1993, EWG has used scientific research, public education, and policy advocacy to highlight federal policies and industrial agricultural practices that pose a threat to public health and to the environment. EWG is based in Washington, D.C.

11. Defendant USDA is an agency of the federal government located in Washington, D.C. It is an "agency" within the meaning of FOIA, 5 U.S.C. § 552(f)(1), the PRA, 44 U.S.C. § 3502(1), and the APA, 5 U.S.C. § 551(1).

## LEGAL FRAMEWORK

### The Paperwork Reduction Act

12. Congress enacted the PRA to "ensure the greatest possible public benefit from and maximize the utility of information created, collected, maintained, used, shared and disseminated by or for the Federal Government" and "provide for the dissemination of public information on a timely basis, on equitable terms, and in a manner that promotes the utility of the information to the public and makes effective use of information technology." 44 U.S.C. § 3501(2), (7).

13. To these ends, the PRA mandates that every agency "ensure that the public has timely and equitable access to the agency's public information" and "provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products." 44 U.S.C. § 3506(d)(1), (3).

14. Office of Management and Budget Circular A-130, which establishes general federal policy for managing public information on government websites, defines "information dissemination products" as "any recorded information, regardless of physical form or characteristics, disseminated by an agency, or contractor thereof, to the public." Off. of Mgmt. & Budget, Exec. Off. of the President, OMB Circular No. A-130, Managing Information as a Strategic Resource (2016).

## The Administrative Procedure Act

15. The APA gives any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," the right to federal judicial review. 5 U.S.C. § 702. A court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706(2)(A).

16. An agency acts arbitrarily when it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

17. An agency acts "not in accordance with law" when it "violates a federal statute." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 220 (2012).

**The Freedom of Information Act**

18. FOIA was enacted "to ensure" public access to information necessary "to hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), including agency records that have "the force and effect of law," H.R. Rep. No. 89-1497, at 7 (1966).

19. FOIA thus requires agencies to affirmatively disclose, "in an electronic format," several categories of information, including "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" and "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(B)–(C). FOIA also requires agencies to affirmatively disclose records that have previously been released pursuant to a FOIA request under § 552(a)(3) and either "have become or are likely to become the subject of subsequent requests for substantially the same records" or have been requested at least three times. *Id.* § 552(a)(2)(D).

20. FOIA independently requires agencies to "index" such records. *Id.* § 552(a)(2)(E).

**FACTUAL ALLEGATIONS**

**USDA Webpages Provided Vital Access to Department Programs, Policies, Data, and Tools.**

21. USDA's mission is "to provide economic opportunity through innovation, helping rural America to thrive; to promote agriculture production that better nourishes Americans while also helping feed others throughout the world; and to preserve our Nation's natural resources through conservation, restored forests, improved watersheds, and healthy private working lands." *Our Agency*, USDA, https://www.usda.gov/about-usda/general-information/our-agency (last visited Feb. 20, 2025).

22. To support this mission, USDA administers sweeping nationwide programs. For example, each year, USDA provides billions of dollars in financial and technical assistance to farmers, invests billions of dollars in rural infrastructure, and manages wildfire risk across hundreds of millions of acres. USDA's policies and programs help determine whether the nation's food supply is stable and safe, whether its forests and grasslands are climate resilient, and whether rural communities have access to essential services.

23. For many years, USDA's official websites served as repositories of policies, information, and data related to its mission and its programs. Through its websites, the department published information about its policies, facilitated participation in its programs, and disseminated research, datasets, and interactive tools to assist farmers, farm advisors, land managers, and other members of the public in making informed decisions, including with respect to climate-change-related risks and vulnerabilities. USDA websites include:

   a. usda.gov, which publishes information about department-wide policies and programs, houses webpages about USDA staff offices, and provides links to USDA subagency websites;

   b. fs.usda.gov, which publishes information about the Forest Service, the USDA subagency charged with managing, conserving, and stewarding the nation's forests and grasslands;

   c. nrcs.usda.gov, which publishes information about the Natural Resources Conservation Service ("NRCS"), the USDA subagency tasked with providing farmers, ranchers, and other private landowners with financial and technical assistance to implement conservation practices;

   d. fsa.usda.gov, which publishes information about the Farm Service Agency ("FSA"), the USDA subagency that oversees federal farm loan programs, provides credit to agricultural producers, administers disaster recovery assistance, and dispenses other forms of income support for farmers;

   e. rd.usda.gov, which publishes information about Rural Development, a USDA subagency that provides loans, grants, and loan guarantees to support infrastructure projects in rural communities; and

f. farmers.gov, which provides farmers, ranchers, farm advisors, and other landowners with tools for accessing federal farm loan programs, as well as agricultural data and other USDA resources.

**USDA Ordered Staff to Purge Department Webpages "Focused on Climate Change."**

24. On January 30, 2025, USDA Director of Digital Communications Peter Rhee sent an email ordering USDA staff to "identify and archive or unpublish any landing pages focused on climate change" by "no later than close of business" on Friday, January 31, 2025.

25. Director Rhee also ordered staff to identify and categorize additional webpages related to climate change. The directive instructed staff to sort webpages into three "tiers": webpages dedicated entirely to climate change were to be designated "Tier 1"; webpages where a significant portion of the content relates to climate change were to be designated "Tier 2"; and webpages where climate change is mentioned in passing were to be designated "Tier 3." As to each webpage, Director Rhee instructed staff to provide the USDA Office of Communications with "the title, link, and your recommendation on how the content should be handled." Director Rhee explained that the Office of Communications "will review the submitted materials and make determinations on next steps."

26. On information and belief, the directive did not give USDA staff discretion to leave any landing pages published and did not explain why the department was ordering staff to archive or unpublish climate-change-focused webpages.

**USDA Removed or Rendered Inaccessible Numerous Essential Webpages.**

27. In response to the January 30, 2025, directive, USDA staff acted swiftly to purge department websites of climate-change-focused webpages.

28. Without any public notice or explanation, USDA removed scores of webpages. Some subagencies, such as the Forest Service, entirely removed the sections of their websites devoted to climate change, eliminating both landing pages and subsidiary climate-change-focused

8

webpages. *See* Ex. A (Forest Service webpage entitled "Climate Change"). Other subagencies, including NRCS and Rural Development, removed landing pages or website sections about funding for climate-change-related programs. As a result, USDA unpublished its own policies, removed critical resources for navigating department programs and funding opportunities, and scrubbed the public record of key information about congressionally authorized programs on which farmers and other members of the public relied.

29. Many of the purged webpages contained resources on which farmers relied to access financial and technical assistance for implementing conservation practices. For example:

   a. Farmers.gov removed a webpage entitled "Climate-Smart Agriculture and Forestry" which enumerated resources for farmers interested in financing the implementation of climate-smart agriculture and forestry practices and purchasing related equipment, including links to a range of USDA funding opportunities and programs, as well as instructions about how to receive technical assistance from USDA staff. *See* Ex. B.

   b. FSA removed a webpage that provided farmers with information about how to apply for Climate-Smart Agriculture and Farm Loan Programs, which "promote sustainable agricultural practices that reduce greenhouse gas emissions, increase carbon sequestration, and enhance the resilience of farming operations to climate change." The webpage explained how the programs work, specified loan purposes and amounts, and provided examples of covered activities, "including conservation projects, renewable energy systems, and other climate-smart technologies." *See* Ex. C.

   c. Farmers.gov removed a webpage that provided illustrative examples of ways in which federal farm loan programs can be used to finance climate-smart agricultural practices and equipment. *See* Ex. D.

30. Many other purged webpages published or linked to datasets and interactive tools on which farmers, landowners, researchers, and other members of the public relied to understand and combat climate-change-related risks and vulnerabilities, to search for federal funding opportunities, and to assess the efficacy of USDA programs. For instance:

   a. The Forest Service removed a geospatial interactive tool called "Climate Risk Viewer," which allowed researchers, land managers, and other members of the public to explore 140 data layers and gain "comprehensive insight into how climate

change may affect national forests and grasslands." Among other things, the Climate Risk Viewer allowed users to "[a]ssess the impacts of climate change on wilderness areas and wild and scenic rivers," "[h]ighlight watersheds where future predicted climate change and demands on water supply will be the greatest," and "[i]dentify areas where mature and old-growth forests on Forest Service . . . lands are most threatened by future climate change." The Forest Service also removed its accompanying user guide. *See* Ex. E (unpublished ArcGIS webpage), Ex. F (user guide).

b. The Forest Service removed its "Climate Change Vulnerability Assessments Across the Nation" StoryMap, an interactive tool that helped farmers, researchers, and other members of the public understand disturbances, extreme weather events, and changing climatic conditions by showcasing locations where federal agencies have conducted climate change vulnerability assessments and providing an interactive dashboard for accessing detailed information about each assessment. *See* Ex. G.

c. NRCS removed a webpage entitled "Mitigation," which explained how conservation practices supported by NRCS can reduce greenhouse gas emissions and improve carbon storage, and which linked to interactive tools that farmers could use to estimate greenhouse gas reductions associated with NRCS-supported conservation practices. These emissions estimations tools can no longer be found via USDA websites. *See* Ex. H.

d. Rural Development removed a webpage entitled "Inflation Reduction Act Investments by State," which collected fact sheets about clean energy and conservation program funding in each state. Because this webpage has been removed, it is now impossible for users to navigate to the individual fact sheets via USDA websites. *See* Ex. I.

31. In many cases, USDA removed landing pages that served as repositories of links to more specific webpages about USDA's climate-focused programs, including those funded by the Inflation Reduction Act. Without the landing pages, it is virtually impossible to navigate to the underlying webpages from USDA's websites, rendering those webpages inaccessible. For example:

a. USDA removed its "Climate Solutions" landing page, which provided links to "a variety of resources and tools to support farmers, ranchers, forest landowners, partners, and rural communities in making informed, science-based decisions to support climate change mitigation and build climate resilience," including the now-purged Forest Service Climate Change Resource Center, "a suite of tools that [were] intended to help land managers incorporate climate change and carbon

stewardship into their decision-making," as well as a now-deleted Farmers.gov webpage about Climate-Smart Agriculture and Forestry. *See* Ex. J.

b. NRCS removed its "Inflation Reduction Act" landing page, rendering inaccessible an interactive map that profiles "farmers, ranchers and forest landowners across the nation who are adopting climate-smart conservation practices with funding from the Inflation Reduction Act," as well as detailed information about funding for oversubscribed conservation programs and greenhouse gas quantification efforts. *See* Ex. K.

c. Rural Development removed its "Inflation Reduction Act" landing page, which explained funding opportunities for clean energy programs authorized by the Inflation Reduction Act and linked to now-purged webpages about specific programs, including the Powering Affordable Clean Energy program and Empowering Rural America program. *See* Ex. L.

d. Rural Development removed the landing page for its "IRA Pocket Guides," which are a pair of documents intended to help eligible groups, including agricultural producers, find opportunities for federal funding to support clean energy initiatives in rural communities. *See* Ex. M.

32. USDA also unpublished or rendered inaccessible webpages setting forth policies and interpretations on which the department has relied when discharging its responsibilities, including administering funding opportunities available for farmers under the Inflation Reduction Act or other statutes, setting climate change adaptation priorities, and fulfilling its obligations to manage and conserve the nation's old-growth forests. For example:

a. NRCS removed a webpage about climate-smart agriculture and forestry mitigation activities and Inflation Reduction Act funding, which set forth, among other things, NRCS's policy on adding, removing, or updating practices included on the Climate-Smart Agriculture and Forestry Mitigation Activities List, as well as NRCS's policy on estimating the impact of included mitigation practices. *See* Ex. N. A PDF presenting the contents of this webpage remains available, but only by navigating directly to its URL. All other references to this content link to the now-removed webpage, including a now-deleted USDA "Climate Solutions" landing page. *See* Ex. N.

b. The Forest Service removed an April 2024 policy document entitled "Mature and Old-Growth Forests: Definition, Identification, and Initial Inventory on Lands Managed by the Forest Service and Bureau of Land Management," which set forth Forest Service policy on defining and inventorying old-growth and mature forests on federal lands. *See* Ex. O.

    c. The Forest Service removed a June 2024 policy document entitled "Mature and Old-Growth Forests: Analysis of Threats on Lands Managed by the Forest Service and Bureau of Land Management," which explained Forest Service policy on defining and identifying threats to old-growth and mature forests on federal lands. *See* Ex. P.

    d. USDA rendered inaccessible a policy document entitled "Departmental Regulation 1070-001: U.S. Department of Agriculture Policy Statement on Climate Change Adaptation," which "establishes the USDA directive to integrate climate change adaptation planning, implementing actions, and performance metrics into USDA programs, policies, and operations." The directive is no longer available on USDA's webpage indexing its department-wide directives and memoranda; it is available only as an appendix to the USDA publication "Action Plan for Climate Adaptation and Resilience," which is available only through a different federal website, sustainability.gov. *See* Ex. Q.

    e. USDA rendered inaccessible a policy document entitled "Secretary's Memorandum 1077-004: Climate Resilience and Carbon Stewardship of America's National Forests and Grasslands," which "outlines actions that [USDA] and [the Forest Service] will undertake so that data-informed policies, strategies, and actions are in place to provide for increased carbon stewardship and climate resilience across our national forests and grasslands." The memorandum is no longer available on USDA's webpage indexing its department-wide directives and memoranda; it is available only by navigating directly to its URL. *See* Ex. R.

    f. The Forest Service removed a policy document entitled "2024 National Sustainable Operations Strategy," which outlines "goals and objectives" for "sustainable operations," including the Forest Service's target of a 65 percent reduction in greenhouse gas emissions against a 2008 baseline by 2030, and whose drafting was "required by laws and regulations." *See* Ex. S.

33. In addition, USDA rendered inaccessible webpages containing instructions to USDA staff about program administration. For instance:

    a. By unpublishing its landing page about the Partnerships for Climate-Smart Commodities, USDA rendered inaccessible its "Memorandum to the Field for the Natural Resources Conservation Service (NRCS) Concerning Partnerships for Climate-Smart Commodities," which "aid[s] in the administration of Partnerships for Climate-Smart Commodities by summarizing and further defining responsibilities within USDA and external to USDA with respect to the effort." *See* Ex. T.

    b. USDA similarly rendered inaccessible a parallel memorandum to FSA staff concerning the Partnerships for Climate-Smart Commodities. *See* Ex. U.

34. USDA has removed or rendered inaccessible many other climate-change-focused webpages that fall within these categories. *See* Exs. V–Y (collecting examples). It is impossible to know the full extent of USDA's purge, however, because USDA has not publicly documented the webpages that it removed or rendered inaccessible.

35. On information and belief, USDA's January 30, 2025, directive did not instruct staff to comply with the department's obligations under FOIA when deleting climate-change-focused webpages, including the obligation to proactively publish records that have already been released under FOIA and that have either been requested three or more times or are likely to become the subject of future requests. USDA very likely removed or rendered inaccessible records that fall within this provision of FOIA.

36. Numerous additional webpages focused on climate change are at risk of being removed or rendered inaccessible pursuant to the January 30, 2025, directive. On information and belief, USDA continues to review climate-change-focused webpages for possible removal, including webpages that are partially devoted to climate-change-related subjects or merely mention climate change in passing.

37. On February 12, 2025, Plaintiffs wrote to USDA to express their concern about the webpages that have been purged from the department's websites and to demand that USDA immediately comply with its statutory obligations under FOIA's affirmative-disclosure provisions. To date, USDA has not responded.

**Plaintiffs Are Harmed by USDA's Purge of Climate-Change-Focused Webpages.**

38. Plaintiffs have suffered, and will continue to suffer, a host of injuries resulting from USDA's purge of climate-change-focused webpages.

39. NOFA-NY, for example, relied on several purged webpages, including on the NRCS website, the FSA website, and Farmers.gov, that provided guidance and resources to

13

farmers interested in participating in federal loan programs to support climate-smart agricultural practices on their farm operations. NOFA-NY has routinely relied on these webpages while administering its Farmer Helpline, a free telephone hotline that helps farmers understand USDA programs and policies that impact organic farming operations, navigate markets, find funding, and access resources for implementing agricultural practices that mitigate and manage the effects of climate change. Without access to the removed webpages, NOFA-NY's technical service providers are unable to connect participating farmers with resources explaining how to fund, implement, and measure climate-smart practices. NOFA-NY is also unable to assist farmers with USDA interactive tools, such as those on the now-purged "Climate Solutions" landing page, to help them incorporate climate change into their planting and land management decisions.

40. USDA's webpage purge has also harmed NOFA-NY's ongoing efforts to ensure that USDA fulfills its existing funding obligations, including to NOFA-NY. Many of NOFA-NY's financial and technical services, such as those offered through the Climate-Smart Farming & Marketing program, are funded by USDA programs, including the Partnerships for Climate-Smart Commodities. Despite promising farmers that USDA funding would not be frozen, and notwithstanding contrary court orders preliminarily enjoining the Trump Administration's "funding freeze," USDA has recently halted disbursements to Partnerships for Climate-Smart Commodities grantees, thus imperiling NOFA-NY's programming. By removing webpages describing eligibility for USDA programs that fund climate-smart agriculture, including the Partnerships for Climate-Smart Commodities, USDA has deprived NOFA-NY of public information it could otherwise use to hold USDA accountable for commitments it has made.

41. The webpage purge also harms NOFA-NY's farmer-members. USDA's webpage removals coincide with the time of year when farmers are making crucial decisions about their

14

operations, including planting and financing decisions. Without access to the purged webpages, NOFA-NY's farmer-members will be forced to make these decisions without complete information about USDA's federal loan programs and without the benefit of tools that can help them mitigate climate-change-related risks and vulnerabilities. Moreover, USDA's webpage purge will make it harder for farmer-members to advocate for unfreezing congressionally authorized funds. By removing webpages about Inflation Reduction Act funding, including funding for the conservation programs on which farmer-members rely, USDA has eliminated from the public record—at a moment of intense public debate—critical information about the scope and efficacy of those programs.

42. NRDC is also harmed by USDA's removal of climate-change-focused webpages. NRDC's work relied on numerous removed webpages, including interactive tools and policy statements. For example, NRDC's researchers depended on now-purged interactive tools like the Forest Service's "Climate Risk Viewer" and "Climate Change Vulnerability Assessments Across the Nation" StoryMap, to understand the Forest Service's analysis of physical conditions affecting federal lands. Researchers were then able to reference—or, when necessary, correct—the Forest Service's analysis in NRDC advocacy, including in comments and public education. Additionally, NRDC's advocacy in support of protections for old-growth and mature forests depended on access to the Forest Service's policy statements concerning how it defines those forests, how it understands and categorizes threats to those forests, as well as its most recent inventory of those forests, all of which have been unpublished. NRDC also relied on Rural Development's now-purged Inflation Reduction Act-related webpages to advocate for rural clean energy programs.

43. EWG is similarly harmed by USDA's webpage purge. EWG's advocacy for federal support for climate-smart agricultural practices depends on several webpages that have either been

unpublished or are at risk of being unpublished. For example, EWG's investigation of and public education about USDA's funding for climate-smart agricultural practices relied on now-purged NRCS and USDA webpages that, among other things, articulated policies concerning mitigation practices and eligibility for various USDA conservation programs. Should USDA unpublish additional webpages concerning climate change pursuant to the January 30, 2025, directive, EWG will be unable to publish in-depth analyses and interactive tools that educate the public about USDA's administration of conversation programs, including EWG's Conservation Database.

## CAUSES OF ACTION

### First Cause of Action
**(Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (D))**

44. This Court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or taken "without observance of procedure required by law," *id*. § 706(2)(D).

45. Many webpages that USDA removed, including the webpages described above, are significant information dissemination products within the meaning of the PRA. *See* 44 U.S.C. § 3506(d)(3).

46. Because USDA provided no advance public notice before removing these webpages or rendering them inaccessible, it failed to comply with its obligation under the PRA to "provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products." *Id*.

47. Because USDA removed or rendered inaccessible webpages containing public information it still possesses, USDA also failed to comply with its obligation under the PRA to "ensure that the public has timely and equitable access to the agency's public information." *Id*. § 3506(d)(1).

48. By removing the webpages in violation of the PRA, USDA failed to observe procedures required by law, or took agency action that was arbitrary, capricious, an abuse of discretion, or not in accordance with law, in contravention of the APA.

### Second Cause of Action
### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

49. This Court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

50. By removing webpages from its websites solely because they focused on climate change, by failing to consider the significant public reliance on those pages, and by failing to provide any justification for doing so, USDA took agency action that was arbitrary, capricious, an abuse of discretion, or not in accordance with law, in contravention of the APA.

### Third Cause of Action
### (Freedom of Information Act, 5 U.S.C. § 552(a)(2)(B)–(D))

51. Pursuant to FOIA's affirmative-disclosure provision, USDA must "make available for public inspection in an electronic format" several categories of information, including "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," "administrative staff manuals and instructions to staff that affect a member of the public," and records "that have been released" under the responsive provision of FOIA and that either "have been requested 3 or more times" or "have become or are likely to become the subject of subsequent requests." 5 U.S.C. § 552(a)(2)(B)–(D).

52. Many webpages that USDA unpublished, including those described in ¶¶ 32–33 above, contained records that fall within FOIA's affirmative-disclosure provision.

53. By removing these webpages, USDA violated its obligation under FOIA to make these webpages available for public inspection in an electronic format.

**Fourth Cause of Action**
**(Freedom of Information Act, 5 U.S.C. § 552(a)(2)(E))**

54. FOIA also requires agencies to "index" all records that must be affirmatively disclosed in an electronic format. 5 U.S.C. § 552(a)(2)(E).

55. In the process of unpublishing climate-change-focused webpages, including landing pages, USDA removed links to numerous records that the department is obligated to make publicly available, rendering those records inaccessible from USDA websites.

56. By making these records inaccessible from its websites, USDA violated FOIA's mandate to index all records that must be affirmatively disclosed in an electronic format.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

A. Declare that USDA's purge of climate-change-focused webpages violated the PRA, FOIA, and the APA;

B. Order USDA to restore webpages that were unlawfully removed on the basis of Director Rhee's January 30, 2025, directive;

C. Enjoin USDA from further implementing Director Rhee's January 30, 2025, directive to archive or unpublish climate-change-focused webpages;

D. Order USDA to comply with its duties under the PRA, including the duty to provide adequate notice before removing or substantially modifying other webpages focused on climate change and the duty to ensure that the public has timely and equitable access to the department's public information;

E. Award Plaintiffs their costs, attorneys' fees, and other disbursements for this action; and

F. Grant any other relief this Court deems appropriate.

Dated: February 24, 2025 　　　　　　　　　Respectfully submitted,

_____

_____

Jeffrey Stein*
Peter Lehner (PL2290)
Earthjustice
48 Wall Street, 15th Floor
New York, New York 10005
(212) 845-7376
jstein@earthjustice.org

Carrie Apfel (4401790)
Earthjustice
1001 G St. NW, Ste. 1000
Washington, D.C. 20001
(202) 667-4500
capfel@earthjustice.org

Stephanie Krent (5535414)
Jackson Busch**
Alex Abdo (AA0527)
Knight First Amendment Institute at Columbia
　University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
stephanie.krent@knightcolumbia.org

*Pro hac vice* application forthcoming
** Application for admission pending

*Counsel for Plaintiffs*

19