## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NORTHEAST ORGANIC FARMING
ASSOCIATION OF NEW YORK,
NATURAL RESOURCES DEFENSE
COUNCIL, and ENVIRONMENTAL
WORKING GROUP,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF AGRICULTURE,

        Defendant.

Civil Action No. 1:25-cv-01529
(MMG)

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Stephanie Krent (5535414)
Jackson Busch*
Alex Abdo (AA0527)
Knight First Amendment Institute at Columbia
  University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
stephanie.krent@knightcolumbia.org

Jeffrey Stein*
Peter Lehner (PL2290)
Earthjustice
48 Wall St., 15th Floor
New York, NY 10005
(212) 854-7376
jstein@earthjustice.org

Carrie Apfel (4401790)
Earthjustice
1001 G Street, NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
capfel@earthjustice.org

* Application for admission pending

*Counsel for Plaintiffs*

**Table of Contents**

Table of Authorities ................................................................................................................ iii

Introduction ............................................................................................................................ 1

Statement of Facts ................................................................................................................. 2

    I.   USDA webpages provided vital access to Department programs, policies, data, and tools. ................................................................................................................................ 2

    II.  USDA removed or rendered inaccessible numerous climate-change-focused webpages. ................................................................................................................................ 4

    III. Plaintiffs have relied, and will continue to rely, on USDA's climate-change-focused webpages. ................................................................................................................. 11

        A.  NOFA-NY ..................................................................................................... 11

        B.  NRDC .......................................................................................................... 12

        C.  EWG ............................................................................................................ 14

Standard of Review .............................................................................................................. 15

Argument ............................................................................................................................. 16

    I.   Plaintiffs are likely to succeed on the merits of their APA claims. .................................. 16

        A.  USDA violated the PRA's "adequate notice" provision .......................................... 17

        B.  USDA violated the PRA's "timely and equitable access" provision .......................... 18

        C.  USDA's decision to purge climate-change-focused webpages was unreasoned ......... 20

    II.  Plaintiffs are likely to suffer irreparable harm unless USDA's climate-change-focused webpages are restored. ................................................................................................ 21

    III. The balance of equities and the public interest support preliminary injunctive relief ...... 26

Conclusion ........................................................................................................................... 27

Certificate of Compliance ..................................................................................................... 29

## Table of Authorities

**Page(s)**

**Cases**

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*,
  470 F. Supp. 3d 32 (D.D.C. 2020) ................................................................. 21, 23

*Cosgrove v. Oregon Chai, Inc.*,
  520 F. Supp. 3d 562 (S.D.N.Y. 2021) ................................................................. 6

*Ctr. for Pub. Integrity v. U.S. Dep't of Def.*,
  411 F. Supp. 3d 5 (D.D.C. 2019) ................................................................... 24

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ............................................................................................ 20

*Drs. for Am. v. Off. of Pers. Mgmt.*,
  No. CV 25-322 (JDB), 2025 WL 452707 (D.D.C. Feb. 11, 2025) ............................. *passim*

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
  416 F. Supp. 2d 30 (D.D.C. 2006) ................................................................. 21, 25

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ........................................................................................ 20

*L.V.M. v. Lloyd*,
  318 F. Supp. 3d 601 (S.D.N.Y. 2018) ............................................................. 20, 27

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ...................................................................................... 18, 19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ......................................................................................... 20

*New York v. Trump.*,
  C.A. No. 25-cv-39-JJM-PAS, 2025 WL 715621 (D.R.I. Mar. 6, 2025) ......................... 24

*New York v. Trump*,
  No. 25-cv-01144 (JAV), 2025 WL 573771 (S.D.N.Y. Feb. 21, 2025) ...................... 25, 26

*New York v. U.S. Dep't of Educ.*,
  477 F. Supp. 3d 279 (S.D.N.Y. 2020) ............................................................. 15, 22

*New York v. U.S. Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020) ............................................................................ 15

*Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   337 F. Supp. 3d 308 (S.D.N.Y. 2018)......................................................................27

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997)................................................................................27

*Yale-New Haven Hosp. v. Leavitt*,
   470 F.3d 71 (2d Cir. 2006).....................................................................................20

**Statutes**

5 U.S.C. § 706(2)(A)..............................................................................17, 18, 19

5 U.S.C. § 706(2)(D)....................................................................................18

44 U.S.C. § 3501(7)......................................................................................18

44 U.S.C. § 3502(12)....................................................................................19

44 U.S.C. § 3506(d)(1).............................................................................17, 18

44 U.S.C. § 3506(d)(3)..............................................................................16, 17

## Introduction

On January 30, 2025, the U.S. Department of Agriculture ("USDA") directed its staff to archive or unpublish webpages focused on climate change. Within hours and without any public notice, USDA deleted dozens of climate-change-focused webpages, removing numerous policies, guides, datasets, interactive tools, and other vital resources about climate-smart agriculture, forest conservation, climate change adaptation, and investment in clean energy projects in rural America, among many other subjects. USDA also deleted landing pages for or removed links to many additional climate-change-focused webpages, rendering those pages inaccessible to Plaintiffs and members of the public who rely on them. In doing so, USDA disabled access to essential information about its programs and policies.

This webpage purge inflicts significant harm on Plaintiffs Northeast Organic Farming Association of New York ("NOFA-NY"), Natural Resources Defense Council ("NRDC"), and Environmental Working Group ("EWG"). Plaintiffs and their members are farmers, farm advisors, researchers, and advocates who routinely depend on USDA digital resources to make urgent financing decisions and participate in fast-moving public debates of national significance. By removing or rendering inaccessible scores of webpages,[1] USDA disrupted the operations of small-scale organic food producers, impeded Plaintiffs' ongoing advocacy around USDA programs and policies, and hampered efforts to restore funding allocated by the Inflation Reduction Act ("IRA") and other statutes. In short, USDA upended Plaintiffs' time-sensitive work.

---

[1] By "remove," Plaintiffs mean that USDA stopped publishing the webpage altogether. By "render inaccessible," Plaintiffs mean that USDA still publishes the page, but it is impossible to navigate to from USDA's websites either because USDA has removed the landing page that indexed the webpage or because it removed the link to the webpage from the landing page.

USDA's webpage purge is plainly unlawful. The Administrative Procedure Act ("APA") requires courts to set aside agency action that is unlawful or arbitrary and capricious, and USDA's conduct fails this standard for at least three reasons. *First*, the removals were undertaken in disregard of the "adequate notice" provision of the Paperwork Reduction Act of 1995 ("PRA"), which ensures that agencies do not abruptly revoke access to significant sources of information. *Second*, the removals block "timely and equitable access" to USDA's public information, also in violation of the PRA. *Third*, the removals constituted unreasoned arbitrary and capricious decision-making, as USDA provided no explanation at all for its sudden removal of climate-change-focused webpages and did not consider Plaintiffs' significant reliance on those webpages. Given these clear violations of law—and the irreparable harm they inflict on Plaintiffs—this Court should enter a preliminary injunction ordering USDA to restore unlawfully removed webpages and enjoining USDA from removing or substantially modifying additional webpages pursuant to its January 30, 2025, directive.

## Statement of Facts

### I.    USDA webpages provided vital access to Department programs, policies, data, and tools.

USDA works "to provide economic opportunity through innovation, helping rural America to thrive; to promote agriculture production that better nourishes Americans while also helping feed others throughout the world; and to preserve our Nation's natural resources through conservation, restored forests, improved watersheds, and healthy private working lands."[2] To carry out this mission, USDA, among many other activities, provides billions of dollars in

---

[2] *About USDA*, USDA, https://perma.cc/H2DP-XEUX (last visited Mar. 11, 2025).

financial and technical assistance to farmers, invests billions of dollars in rural infrastructure, and manages wildfire risk across hundreds of millions of acres. *See* Declaration of Marcie Craig ("Craig Decl.") ¶ 4 (referencing USDA programs that help farmers finance climate-smart agricultural practices); Declaration of Anne Schechinger ("Schechinger Decl.") ¶ 3 (describing USDA's "multi-billion-dollar conservation programs"); Declaration of Jeffrey McManus ("McManus Decl.") ¶¶ 4–5 (describing multi-billion-dollar rural clean energy programs). These policies and programs help determine whether the nation's food supply is stable and safe, whether its forests and grasslands are climate resilient, and whether rural communities have access to essential services.

For many years, USDA's official websites served as repositories of policies, information, and data related to its mission and its programs. *See, e.g.*, Declaration of Corrine Hansch ("Hansch Decl.") ¶ 7 (describing reliance on USDA webpages); Schechinger Decl. ¶ 3 (same). Through its websites, the Department published information about its policies, facilitated participation in its programs, and disseminated research, datasets, and interactive tools to assist farmers, farm advisors, land managers, and other members of the public in making informed decisions, including with respect to climate-change-related risks and vulnerabilities. USDA websites include:

- usda.gov, which publishes information about department-wide policies and programs, houses webpages about USDA staff offices, and provides links to USDA subagency websites;

- fs.usda.gov, which publishes information about the Forest Service, the USDA subagency charged with managing, conserving, and stewarding the nation's forests and grasslands;

3

- nrcs.usda.gov, which publishes information about the Natural Resources Conservation Service ("NRCS"), the USDA subagency tasked with providing farmers, ranchers, and other private landowners with financial and technical assistance to implement conservation practices;

- fsa.usda.gov, which publishes information about the Farm Service Agency ("FSA"), the USDA subagency that oversees federal farm loan programs, provides credit to agricultural producers, administers disaster recovery assistance, and dispenses other forms of income support for farmers;

- rd.usda.gov, which publishes information about Rural Development, a USDA subagency that provides loans, grants, and loan guarantees to support infrastructure projects in rural communities; and

- farmers.gov, which provides farmers, ranchers, farm advisors, and other landowners with tools for accessing federal farm loan programs, as well as agricultural data and other USDA resources.

## II.     USDA removed or rendered inaccessible numerous climate-change-focused webpages.

On January 30, 2025, USDA Director of Digital Communications Peter Rhee sent an email ordering USDA staff to "identify and archive or unpublish any landing pages focused on climate change" by "no later than close of business" on Friday, January 31, 2025.[3] Director Rhee also ordered staff to identify and categorize additional webpages related to climate change into three "tiers": webpages dedicated entirely to climate change were to be designated "Tier 1";

---

[3] *See* Will Steakin, *USDA Orders Removal of Climate Change Mentions from Public Websites*, ABC News (Jan. 31, 2025), https://perma.cc/T7KV-UNYQ.

webpages where a significant portion of the content relates to climate change were to be designated "Tier 2"; and webpages where climate change is mentioned in passing were to be designated "Tier 3."[4] As to each webpage, Director Rhee instructed staff to provide the USDA Office of Communications with "the title, link, and [their] recommendation on how the content should be handled" to facilitate a review of all climate-change-related USDA webpages.[5]

In response to the January 30, 2025, directive, USDA staff acted swiftly to purge department websites of climate-change-focused webpages. Without providing any public notice or explanation,[6] USDA unpublished its own policies, removed critical resources for navigating Department programs and funding opportunities, and scrubbed the public record of key information about congressionally authorized programs on which farmers and other members of the public relied. *See, e.g.*, McManus Decl. ¶ 10 (describing discovery that USDA webpages had been removed); Schechinger Decl. ¶ 9 (similar).

Several of the purged webpages contained resources which farmers and advocates used to access financial and technical assistance for implementing conservation practices.  For instance:

- Farmers.gov removed a webpage entitled "Climate-Smart Agriculture and Forestry" which enumerated resources for farmers interested in financing the implementation of climate-smart agriculture and forestry practices and purchasing related equipment, including links to a range of USDA funding opportunities and programs, as well as instructions about how to receive technical assistance from USDA staff. An archived

---

[4] *Id.*

[5] *Id.*

[6] *See id.*

version of the webpage as of January 22, 2025, is available at https://perma.cc/HWV2-FATZ.[7] *See* Hansch Decl. ¶ 7; Craig Decl. ¶¶ 8–9.

- FSA removed a webpage entitled "Climate-Smart Agriculture and Farm Loan Programs" that provided farmers with information about how to apply for loans to implement climate-smart agricultural practices, which "promote sustainable agricultural practices that reduce greenhouse gas emissions, increase carbon sequestration, and enhance the resilience of farming operations to climate change." An archived version of the webpage as of January 17, 2025, is available at https://perma.cc/C6ZD-R4JR. *See* Hansch Decl. ¶ 7; Craig Decl. ¶¶ 8–9.

- Farmers.gov removed a fact sheet entitled "Climate-Smart Agriculture and Farm Loan Programs" that provided illustrative examples of ways in which federal farm loan programs can be used to finance climate-smart agricultural practices and equipment. An archived version of the factsheet as of January 8, 2025, is available at https://perma.cc/UDR4-V2JB. *See* Hansch Decl. ¶ 7; Craig Decl. ¶¶ 8–9.

USDA also removed webpages that published or linked to datasets and interactive tools on which farmers, landowners, researchers, and other members of the public relied to understand and combat climate-change-related risks and vulnerabilities, to search for federal funding opportunities, and to assess the efficacy of USDA programs. For example:

---

[7] The Court may take judicial notice of archival copies of USDA webpages generated by Plaintiffs' counsel using the Internet Archive Wayback Machine. *See Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021); *see also Wayback Machine General Information*, Internet Archive, https://help.archive.org/help/wayback-machine-general-information (last visited Mar. 13, 2025) ("The Internet Archive Wayback Machine is a service that allows people to visit archived versions of Web sites. Visitors to the Wayback Machine can type in a URL, select a date range, and then begin surfing on an archived version of the Web.").

- The Forest Service removed a geospatial interactive tool called "Climate Risk Viewer," which allowed researchers, land managers, and other members of the public to explore 140 data layers and gain "comprehensive insight into how climate change may affect national forests and grasslands." An archived version of a now-removed guide to the Climate Risk Viewer as of January 18, 2025, is available at https://perma.cc/L76B-4H59. *See also* Declaration of Garett Rose ("Rose Decl.") ¶¶ 10–13.

- The Forest Service removed its "Climate Change Vulnerability Assessments Across the Nation" StoryMap, an interactive tool that helped farmers, researchers, and other members of the public understand disturbances, extreme weather events, and changing climatic conditions by showcasing locations where federal agencies have conducted climate change vulnerability assessments and providing an interactive dashboard for accessing detailed information about each assessment. An archived version of a now-removed announcement of the tool as of February 3, 2025, is available at https://perma.cc/M3XU-YX3D.

- NRCS removed a webpage entitled "Mitigation," which explained how conservation practices supported by NRCS can reduce greenhouse gas emissions and improve carbon storage, and which linked to interactive tools that farmers could use to estimate greenhouse gas reductions associated with NRCS-supported conservation practices. An archived version of the webpage as of January 20, 2025, is available at https://perma.cc/T2HB-LBDC.

- Rural Development removed a webpage entitled "Inflation Reduction Act Investments by State," which collected fact sheets about clean energy and conservation program funding in each state. An archived version of the webpage as of January 17, 2025, is available at

https://perma.cc/6R5X-GHHM. *See also* McManus Decl. ¶ 8 (discussing reliance on now-removed Rural Development webpages about IRA investments in rural clean energy projects).

USDA removed landing pages that served as repositories of links to more specific webpages about USDA's climate-focused programs, including IRA-funded programs impacted by the Trump Administration's funding freeze. For example:

- USDA removed its "Climate Solutions" landing page, which provided links to "a variety of resources and tools to support farmers, ranchers, forest landowners, partners, and rural communities in making informed, science-based decisions to support climate change mitigation and build climate resilience," including the now-purged Forest Service Climate Change Resource Center, "a suite of tools that [were] intended to help land managers incorporate climate change and carbon stewardship into their decision-making." An archived version of the webpage as of January 22, 2025, is available at https://perma.cc/2ML6-KVRB. *See* Craig Decl. ¶ 12; Schechinger Decl. ¶ 12.

- USDA removed its "Partnerships for Climate-Smart Commodities" landing page, which served a central repository of information about the Department's $3.1 billion dollar program to expand markets for commodities produced with fewer greenhouse gas ("GHG") emissions, including policies, staff memoranda, fact sheets, interactive tools, and videos, including now-deleted presentations about the program's scope, efficacy, and administration. An archived version of the webpage as of December 30, 2025, is available at https://perma.cc/C6WM-FWTB. *See* Craig Decl. ¶ 14–15.

- NRCS removed its "Greenhouse Gas Quantification and the Inflation Reduction Act" landing page, which aggregated information about USDA's "comprehensive strategy to

improve data, models and tools needed for improving estimates of the impact of conservation practices on GHG emissions and carbon sequestration and to advance national reporting," including now-removed progress presentations in which Department leaders "provide[d] information about [their] work plans and progress made to-date toward accomplishing their goals." An archived version of the webpage as of January 18, 2025, is available at https://perma.cc/3NJ9-LU8G. *See* Schechinger Decl. ¶ 7.

- The Forest Service removed its "Climate Change Policy and Initiatives" landing page, which provided "resources on recent climate change policies and related Forest Service activities," including "numerous climate adaptation-related literature sources and reviews, assessments, and tools," such as the now-removed "Climate Risk Viewer" and the "Climate Change Resource Center." An archived version of the webpage as of January 17, 2025, is available at https://perma.cc/J55T-53F4.

- Rural Development removed its "Inflation Reduction Act" landing page, which explained funding opportunities for clean energy programs authorized by the IRA and linked to now-purged webpages about specific programs, including the Powering Affordable Clean Energy program and Empowering Rural America program. An archived version of the webpage as of January 16, 2025, is available at https://perma.cc/JC9K-X99M. *See* McManus Decl. ¶ 8.

USDA also unpublished webpages setting forth policies and interpretations on which the Department has relied when discharging its responsibilities, including administering funding opportunities available for farmers under the IRA or other statutes and fulfilling its obligations to manage and conserve the nation's old-growth forests. For example:

- NRCS removed a webpage entitled "FAQs: Climate-Smart Agriculture and Forestry Mitigation Activities and Inflation Reduction Act Funding," which set forth, among other things, NRCS's policy on adding, removing, or updating its list of conservation practices that qualify for IRA funding, as well as NRCS's policy on estimating the climate impact of those practices. An archived version of the webpage as of January 22, 2025, is available at https://perma.cc/454R-9L7W. *See* Schechinger Decl. ¶ 8.

- The Forest Service removed an April 2024 policy document entitled "Mature and Old-Growth Forests: Definition, Identification, and Initial Inventory on Lands Managed by the Forest Service and Bureau of Land Management," which set forth the Forest Service's approach to defining and inventorying old-growth and mature forests on federal lands. An archived version of the document as of January 15, 2025, is available at https://perma.cc/B9SA-2CVN. *See* Rose Decl. ¶ 8.

USDA has removed or rendered inaccessible many other climate-change-focused webpages that fall within these categories. *See, e.g.*, https://perma.cc/MJ7V-26YA (archiving, as of January 17, 2025, now-deleted Forest Service webpage entitled "Climate Tools and Data" that collected climate-related tools and data); https://perma.cc/7DEM-J4EN (archiving, as of January 17, 2025, webpage entitled "Climate Action Tracker" about the Forest Service's now-deleted reporting and tracking tool for Forest Service climate-change-related actions); https://perma.cc/P2Y6-XS9H (archiving, as of January 17, 2025, NRCS webpage about climate change adaptation); https://perma.cc/38W8-WQ6K (archiving, as of January 22, 2025, the Forest Service's analysis of threats to mature and old-growth forests on federal lands entitled "Mature and Old-Growth Forests: Analysis of Threats on Lands Managed by the Forest Service and Bureau of Land Management"); *see also* Compl. ¶¶ 29-34, ECF No. 1 (collecting additional

10

examples). However, because USDA has not publicly documented which webpages have been removed, it is impossible to know the full extent of USDA's webpage purge.

### III. Plaintiffs have relied, and will continue to rely, on USDA's climate-change-focused webpages.

USDA's climate-change-focused webpages have been, and will continue to be, vital to Plaintiffs and their members.

#### A. NOFA-NY

NOFA-NY, a "nonprofit organization of farmers, gardeners, and consumers working together to create a sustainable regional food system," and its members regularly relied on now-removed USDA webpages. Craig Decl. ¶ 2. Among the many services it provides, NOFA-NY guides and supports hundreds of local farmers each year "through the process of implementing organic and climate-smart agricultural practices," including by fielding their questions about navigating USDA programs and accessing relevant digital resources on USDA websites. *Id.* ¶ 4. When operating NOFA-NY's free telephone hotline for farmers, the Farmer Helpline, NOFA-NY's technical assistance staff "have frequently directed farmers to [now-removed] [FSA] and Farmers.gov webpages," including when answering their questions about "how to finance projects to make farm operations more sustainable and climate resilient." *Id.* ¶ 8. Without access to these webpages, NOFA-NY's staff lack "key resources" for quickly and effectively explaining "how [USDA's] farm loan programs work, how much financing farmers can access through various loan programs, and which climate-smart activities and equipment purchases can be financed through different loan programs." *Id.* ¶ 9.

NOFA-NY's members have also relied on these webpages—and will need to rely on them again soon. For instance, Corinne Hansch, owner and manager of the certified organic

Lovin' Mama Farm, is currently seeking to expand her farm's capacity to grow field crops using organic and climate-smart agricultural practices and will soon need to finance related equipment and infrastructure purchases. Hansch Decl. ¶ 8. If still available, she would use the now-deleted FSA and Farmers.gov webpages to learn "about how to access loans for the types of climate-smart agricultural practices [she] intend[s] to implement, and equipment purchases [she] intend[s] to make," but will instead be forced to make these "crucial, short-term financial decisions" without "complete information." *Id.* ¶¶ 8–9.

The webpage purge has also impaired NOFA-NY's ability to carry out its work in other ways. By removing and rendering inaccessible numerous webpages without explanation, USDA has "significantly undermined [NOFA-NY's] ability to trust that USDA digital resources are up-to-date and accurate," which in turn "damages [its] ability to help farmers make time-sensitive and financially significant decisions in reliance on USDA digital resources." Craig Decl. ¶ 11. And by removing a central repository of information about the Partnerships for Climate-Smart Commodities—through which NOFA-NY received a significant portion of its funding before it was frozen by USDA—NOFA-NY no longer has access to "public information it could have used . . . to educate the public and members of Congress about the importance of defending USDA programs and restoring promised funds." *Id.* ¶ 15.

### B. NRDC

Environmental and public health nonprofit NRDC has also been harmed—and will continue to be harmed—by USDA's removal of climate-change-focused webpages. For example, USDA webpages are essential to NRDC's advocacy in support of two multi-billion-dollar rural clean energy programs that were enacted as part of the IRA. McManus Decl. ¶¶ 4, 8. When USDA scrubbed the Rural Development website of multiple webpages about these programs—

including "the only centralized source for detailed information about . . . funding recipients, the types of clean energy projects funded, [] the scale of investments," "estimates of job creation," and "emissions reductions resulting from the projects"—NRDC's work was impaired in several ways. *Id.* ¶ 9. NRDC was deprived of key resources for monitoring the effectiveness of these programs, raising public awareness about the benefits of the programs, providing concrete examples of those benefits to members of Congress and other decision-makers, identifying affected community members to enable their participation in required consultation processes, and identifying for assistance rural energy cooperatives whose funding has been frozen. *Id.* ¶¶ 11–19. This advocacy and outreach are especially important right now "given the fast-moving public debate on the Trump administration's funding freezes, which have affected both programs," but USDA's webpage purge has cut off NRDC's access to the resources it needs to carry out this work. *Id.* ¶ 13.

The webpage purge has similarly set back NRDC's efforts to protect "the nation's mature and old-growth trees and forests, which foster diverse plant and animal life and play an outsized role in sequestering and storing carbon." Rose Decl. ¶ 4. Now-removed USDA webpages and interactive tools, such as the Forest Service's inventory of mature and old-growth forests and the Climate Risk Viewer, were essential resources for this work. For instance, the inventory of mature and old-growth forests was "critical" to NRDC's development of technical comments critiquing the Forest Service's draft environmental impact statement for its proposal to uniformly amend nearly all National Forest Service land management plans. *Id.* ¶ 8. And NRDC intended to use the Climate Risk Viewer in its ongoing forest protection work to "further develop a workable national mature and old-growth forest policy and build out a technical case supporting it," and get input from "tribal nations, rural communities, scientists, and other members of the

public," but this tool and its dozens of data layers are no longer available. *Id.* ¶¶ 10–11 (noting NRDC's reliance on the Forest Service's recent representations that it would continue to improve the Climate Risk Viewer). Moreover, NRDC's inability to access these resources impedes its ability to engage in the current, "fast-moving public debate" about recently announced dramatic shifts in federal forest management policy. *Id.* ¶¶ 9, 12.

### C. EWG

EWG is similarly harmed by USDA's webpage purge. EWG "routinely rel[ies] on public information published on USDA webpages, including datasets, policy statements, guidance documents, technical reports, and webinars, to track how USDA allocates its funds, to understand USDA's rationales for its funding decisions, and to assess the climate change and other environmental impacts of those decisions." Schechinger Decl. ¶ 3. These resources have been especially critical to EWG's work "ensuring that USDA's conservation programs pay farmers to implement conservation practices that have proven climate benefits." *Id.* ¶ 4. For instance, when drafting a January 2025 report analyzing USDA's funding for climate-smart conservation practices—which uncovered that USDA paid $624.3 million to farmers to implement conservation practices that do not have proven climate benefits—EWG "relied extensively" on two now-deleted NRCS webpages. *Id.* ¶¶ 7-8. These webpages were "invaluable resource[s]" for understanding, among other things, "the standards that USDA purports to apply when determining whether a conservation practice qualifies" for certain funding streams, as well as the state of the Department's progress toward "develop[ing] methodologies for quantifying the climate benefits of certain" conservation practices. *Id.* Indeed, these webpages "provided the basis" for policy recommendations set forth in EWG's January 2025 report and were "essential"

to that report's analysis demonstrating USDA's failure to "faithfully implement[]" statutory mandates for climate-smart conservation practice funding. *Id.*

USDA's webpage purge has also "caused significant confusion about the state of USDA policy," making it significantly harder for EWG "to hold USDA accountable and advocate for better policy outcomes." *Id.* ¶ 10. For instance, even as USDA removed a webpage setting forth NRCS policies with respect to climate-smart conservation practices, it inexplicably left up an older, inconsistent iteration of the same document. *Id.* This sort of inconsistency greatly undermines EWG's ability to trust that information on USDA websites is up to date and accurate, "disrupt[ing] [its] ability to engage in effective and timely advocacy." *Id.* ¶ 12.

In addition, USDA's webpage removals have impeded "EWG's ability to provide detailed information to members of Congress" at a moment of intense public debate about the future of IRA-funded programs. *Id.* ¶ 11. For example, by removing a webpage about NRCS's GHG quantification efforts funded by the IRA, USDA took down "the only source of recent information about NRCS's progress towards measuring the climate benefits" of certain conservation practices. *Id.* In doing so, USDA scrubbed the public record of irreplaceable information about the consequences of "cutting off IRA funds." *Id.*

### Standard of Review

To obtain a preliminary injunction, Plaintiffs must establish that: "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020). "Where, as here, the government is a party to the suit, the final two factors merge." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020).

**Argument**

Each of the preliminary injunction factors weighs in favor of granting Plaintiffs' motion for preliminary relief. *First*, Plaintiffs are likely to succeed on their claims that USDA violated the APA by failing to adhere to the PRA's substantive and procedural requirements, and by failing to engage in reasoned decision-making. *Second*, USDA's webpage purge is causing Plaintiffs irreparable harm by, among other things, thwarting their ability to address time-sensitive problems and engage in fast-moving, nationally significant debates. *Third*, the balance of equities and the public interest favor Plaintiffs, because the restoration of vital climate-change-focused webpages will not burden USDA's ability to carry out its work, whereas farmers, researchers, advocates, and other members of the public will greatly benefit from renewed access to critical resources.

## I.    Plaintiffs are likely to succeed on the merits of their APA claims.

Plaintiffs are likely to succeed on their APA claims. USDA's website purge constitutes final agency action because the removal of webpages in response to the January 30, 2025, directive represents the culmination of the Department's decision-making process. *See Drs. for Am. v. Off. of Pers. Mgmt.*, No. CV 25-322 (JDB), 2025 WL 452707, at *4–5 (D.D.C. Feb. 11, 2025). And under the APA, final agency action must be set aside where it is not in accordance with law, an abuse of discretion, or arbitrary and capricious. Here, USDA's website purge violates the APA in at least three ways: USDA (1) violated the PRA's requirement that it "provide adequate notice when initiating, substantially modifying, or terminating significant information dissemination products," 44 U.S.C. § 3506(d)(3); (2) violated the PRA's mandate to "ensure that the public has timely and equitable access to the agency's public information," *id.* §

3506(d)(1); and (3) engaged in arbitrary and capricious decision-making, *see* 5 U.S.C. §
706(2)(A).

### A. USDA violated the PRA's "adequate notice" provision.

*First*, by removing or obscuring vitally important webpages without any notice at all,
USDA "substantially modif[ied]" or "terminat[ed] significant information dissemination
products" without "adequate notice" in violation of the PRA, 44 U.S.C. § 3506(d)(3), and
therefore acted "not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A).

The webpages USDA removed or rendered inaccessible constitute "significant
information dissemination products," 44 U.S.C. § 3506(d)(3). They are information
dissemination products because they constitute "recorded information . . . disseminated by an
agency, or contractor thereof, to the public." Off. of Mgmt. & Budget, Exec. Off. of the
President, OMB Circular No. A-130, Managing Information as a Strategic Resource (2016).

And the webpages are undoubtedly "significant." *See Drs. for Am.*, 2025 WL 452707, at
*7 (holding that under the "ordinary meaning" of the term "significant," HHS webpages were
significant information dissemination practices because they "likely have influence or a major
effect"). Indeed, among many other webpages, USDA removed "key resources" that "explain
how farm loan programs work, how much financing farmers can access through various loan
programs, and which climate-smart [agricultural] activities and equipment purchases can be
financed through different loan programs," Craig Decl. ¶ 9; *see also* Hansch Decl. ¶¶ 7-11
(discussing the importance of these webpages to a small organic farm in upstate New York);
deleted "the only centralized source for detailed information about" multi-billion-dollar USDA-
administered rural clean energy programs, "including the names and locations of funding
recipients, the types of clean energy projects funded, and the scale of investments," McManus

17

Decl. ¶ 9; unpublished "an interactive map" that "aggregates useful climate-related data" and, if still available, could inform analysis of the ecological consequences of recent shifts in federal logging policy, Rose Decl. ¶¶ 10, 12; and eliminated "the only source of recent information about [USDA's] progress towards measuring the climate benefits" of agricultural practices that receive hundreds of millions of dollars in federal support, Schechinger Decl. ¶ 11.

Despite their significance, USDA removed each of these webpages and many other significant climate-change-focused webpages without providing any notice whatsoever—let alone the "adequate notice" required by the PRA. Instead, Plaintiffs simply discovered that vital resources were no longer available, prompting them to "expend[] significant time combing through USDA's websites" to search for lost resources, *id.* ¶ 12, and leaving them confused about the accuracy of information that remains on USDA webpages, *id.* ¶ 10; Craig Decl. ¶ 11. By pulling the rug out from underneath Plaintiffs and depriving them of the opportunity to prepare for lost access, USDA violated the PRA's requirements and failed to act in accordance with the law. *See* 5 U.S.C. § 706(2)(A), (D); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 220 (2012) (holding that an agency acts "not in accordance with law" when it "violates a federal statute").

### B.  USDA violated the PRA's "timely and equitable access" provision.

*Second*, USDA's webpage purge is contrary to its obligation to provide "timely and equitable access" to its "public information" under a separate provision of the PRA. 44 U.S.C. § 3506(d)(1); *see also id.* § 3501(7) (stating that Congress enacted the PRA to "provide for the dissemination of public information on a timely basis, on equitable terms, and in a manner that promotes the utility of the information to the public"). The webpages at issue here constitute "public information" within the meaning of the PRA. "Public information" is "any information,

18

regardless of form or format, that an agency discloses, disseminates, or makes available to the public." *Id*. § 3502(12). The now-purged webpages fall within this category: the policies, memoranda, guides, presentations, datasets, and interactive tools at issue in this case were once housed by the USDA on its public-facing websites.

By entirely removing these webpages from its websites or making it impossible to navigate to the webpages via its websites, USDA has failed to provide "timely and equitable access" to the information. Since January 31, 2025, some Plaintiffs have had to expend considerable effort trying to replicate information that used to be available through USDA webpages so that they can provide resources and education to farmers. *See* Craig Decl. ¶¶ 9–11 ("My staff are acutely affected by the loss of these digital resources at this time of year, as they are currently advising farmers on planting and operational decisions that must be made before the warmer months arrive."); *see also* Hansch Decl. ¶ 8 (describing need for timely access to these webpages as a farmer). In other cases, Plaintiffs' inability to access USDA webpages has made it impossible to carry out planned outreach and assistance. *See* McManus Decl. ¶ 19 (stating that if resources were available, he "would have relied on [USDA] webpages to contact and assist cooperatives affected by the Trump administration's funding freezes"). Plaintiffs have also been left without crucial resources to inform their advocacy efforts during a time of intense public debate around USDA funding, policies, and priorities. *See* Schechinger Decl. ¶¶ 10–12 (describing "confusion and delay" wrought by USDA's removal of climate-change-focused landing pages); McManus Decl. ¶¶ 13–14; Rose Decl. ¶¶ 9, 12; Craig Decl. ¶ 14. USDA has failed entirely to provide timely or equitable access to these webpages, and its removal of them was therefore "not in accordance with law." 5 U.S.C. § 706(2)(A); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 220.

### C.  USDA's decision to purge climate-change-focused webpages was unreasoned.

*Third*, USDA failed to "engage in reasoned decisionmaking" in taking down these webpages, for two reasons: (1) it failed to provide any justification at all for its webpage purge; and (2) it failed to consider the significant public reliance on now-removed climate-change-focused webpages. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up).

USDA is required to "articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983). Nonetheless, USDA offered no justification whatsoever for purging numerous vital webpages. Where, as here, an agency provides "no contemporaneous explanation at all," its decision is arbitrary and capricious. *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 83 (2d Cir. 2006); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("[W]here the agency has failed to provide even [a] minimal level of analysis, its action is arbitrary and capricious . . . ."); *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 619 (S.D.N.Y. 2018) (same).

Nor may USDA, consistent with the APA, "entirely fail[] to consider an important aspect of the problem" before it. *State Farm*, 463 U.S. at 43. But here, USDA completely "failed to consider" the "substantial reliance" by farmers, farm advisors, researchers, advocates, and many other members of the public "on the removed webpages." *Drs. for Am.*, 2025 WL 452707, at *8. Farmers "need accurate, timely, and user-friendly information about federal loan opportunities through USDA" to make "crucial, short-term financial decisions" ahead of planting season, but USDA nevertheless removed such information from its websites. Hansch Decl. ¶ 9; Craig Decl. ¶¶ 8–10. Researchers and advocates depend on access to comprehensive information about USDA programs to monitor their effectiveness and convey concrete examples of the programs'

importance to congressional decisionmakers, yet USDA has removed this information, too. *See,*
*e.g.*, McManus Decl. ¶¶ 11–19 (describing NRDC's reliance on USDA webpages for its planned
advocacy in support of rural clean energy cooperatives); Schechinger Decl. ¶¶ 7–11 (describing
EWG's reliance on USDA webpages for its advocacy aimed at ensuring that USDA's
conservation programs pay farmers to implement conservation practices that have proven climate
benefits). By entirely failing to consider this significant reliance on now-removed climate-
change-focused webpages, USDA acted arbitrarily and capriciously.

Accordingly, Plaintiffs are likely to succeed on the merits of their APA claims that, by
removing or rendering inaccessible climate-change-focused webpages without any notice or
explanation, USDA violated the PRA's procedural and substantive requirements and failed to
engage in reasoned decision-making.

## II.    Plaintiffs are likely to suffer irreparable harm unless USDA's climate-change-focused webpages are restored.

USDA's webpage purge has already caused Plaintiffs to suffer irreparable harm, and that
harm is likely to continue absent a preliminary injunction.

The government's deprivation of information causes irreparable harm when it impairs a
plaintiff in a manner that is "certain and great." *Drs. for Am.*, 2025 WL 452707, at *8 (quoting
*Wisconsin Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). The
government inflicts this sort of irreparable injury when it impedes a plaintiff from effectively
addressing a time-sensitive problem. *See id.* at *9. It similarly causes irreparable harm when it
thwarts "efforts to inform and impact a rapidly evolving discussion of national consequence."
*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020); *see*
*also Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (granting

preliminary relief to ensure "timely" access to "information vital to [a] current and ongoing debate surrounding the legality" of an executive branch policy). Where, as here, an injury "cannot be remedied if a court waits until the end of trial," preliminary relief is appropriate. *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d at 303 (citation omitted); *accord Drs. for Am.*, 2025 WL 452707, at *9.

Plaintiffs are likely to suffer precisely these types of irreparable injuries unless a preliminary injunction is granted. NOFA-NY and its members, for example, need access to the now-removed webpages to facilitate immediate and consequential decisions about farming investments. NOFA-NY's technical assistance staff are "acutely affected" by their inability to access "multiple FSA and Farmers.gov webpages about financing climate-smart agriculture practices through farm loan programs," "as they are currently advising farmers on planting and operational decisions that must be made before the warmer months arrive." Craig Decl. ¶ 9; *Drs. for Am.*, 2025 WL 452707, at *9 (removing agency webpages causes irreparable harm where deprivation of information prevented a plaintiff from effectively performing work on a time-sensitive issue). Farmer and NOFA-NY member Corinne Hansch, who is "currently making decisions about how to finance expansions on [her] farm in the near term," is similarly harmed by the lack of resources that reliably describe USDA funding opportunities. Hansch Decl. ¶ 8–9 (explaining that the removal of these webpages impairs her ability to "quickly figure out which USDA farm loan programs can fund [her farm's] planned expansions"). Moreover, NOFA-NY and its members must now do without these digital resources just as USDA has "fire[d] hundreds of staff across the country," which makes it harder "to access USDA funding opportunities in person or over the phone." *Id*. ¶ 11. Against this backdrop, USDA's webpage purge is likely to

immediately impede organic farmers from "bringing healthy food to many community members who wouldn't otherwise be able to access it." *Id.* ¶ 5.

In addition, USDA's webpage removals have invited confusion about whether information on its websites is up-to-date and accurate, compromising Plaintiffs' ability to "serve as reliable liaisons" between the public and "federal resources." Craig Decl. ¶ 10. For instance, because USDA removed a policy document concerning funding for climate-smart agricultural practices but left up a conflicting, earlier version of the same document, EWG can no longer confidently discern "the state of USDA policy" with respect to these practices. Schechinger Decl. ¶ 10. Such confusion does not simply impede some Plaintiffs' "ability to hold USDA accountable and advocate for better policy outcomes," *id.*, but also hampers others' ability to quickly and confidently help members of the public, including farmers, navigate complex program requirements and funding opportunities, *see* Craig Decl. ¶¶ 6, 10–11; McManus Decl. ¶¶ 17–18 (discussing how webpage removals thwart NRDC's plans to facilitate community members' participation in required consultation processes for rural clean energy programs). As such, USDA's webpage purge significantly undermines Plaintiffs' capacity to effectively and swiftly do their jobs. *Drs. for Am.*, 2025 WL 452707, at *9.

USDA's removal of climate-change-focused webpages also disrupts Plaintiffs' "efforts to inform and impact [the] rapidly evolving" debate about funding allocated by the IRA and other statutes. *Am. Immigr. Council*, 470 F. Supp. 3d at 38. In recent weeks, the Trump Administration's refusal to disburse funds allocated by Congress has been the subject of intense media coverage, high profile litigation, and a fast-moving policy debate. And no wonder: this "funding freeze" constitutes an existential crisis for many businesses, nonprofit organizations, and individuals—including thousands of farmers across the country—whose survival hangs in

the balance.[8] The ultimate resolution of this debate will have significant consequences for our constitutional order. *See New York v. Trump.*, C.A. No. 25-cv-39-JJM-PAS, 2025 WL 715621, at *1 (D.R.I. Mar. 6, 2025) ("The Executive's categorical freeze of appropriated and obligated funds fundamentally undermines the distinct constitutional roles of each branch of our government.").

Plaintiffs have sought to contribute to this highly consequential public debate, but USDA's webpage purge hinders these efforts. NOFA-NY—which has been forced to lay off staff because of the funding freeze—can no longer access webpages demonstrating the efficacy of the USDA funding on which it relies, diminishing its ability to defend this funding in outreach to the public and advocacy aimed at congressional leaders. *See* Craig Decl. ¶¶ 14–15. Likewise, because USDA has removed multiple webpages about IRA-funded rural clean energy programs, NRDC cannot "find concrete examples of how [rural clean energy] programs benefit rural communities," which prevents it from "rais[ing] public awareness of the benefits of the [clean energy] projects" and educating members of Congress about "the real-world effects these investments would have in their districts." McManus Decl. ¶¶ 13, 16. EWG has similarly been deprived of information it could use to "educate decisionmakers about specific ways in which cutting off IRA funds may disrupt efforts to improve federal support for climate-smart conservation practices." Schechinger Decl. ¶ 11. USDA's webpage purge has thus repeatedly stifled Plaintiffs' participation in a gravely important, time-sensitive debate. *Cf. Ctr. for Pub.*

---

[8] *See, e.g.*, P.J. Huffstutter, Leah Douglas, & Tom Polansek, *Farmers Put Plans, Investments on Hold Under Trump USDA Spending Freeze*, Reuters (Mar. 10, 2025), https://perma.cc/A2J7-JQ7X; Ayurella Horn-Muller & Naveena Sadasivam, *Slim Margins, Climate Disasters, and Trump's Funding Freeze: Life or Death for Many US Farms*, Grist (Mar. 5, 2025), https://perma.cc/4XGE-DTB6; Linda Qiu & Julie Creswell, *Trump's Funding Freezes Bruise a Core Constituency: Farmers*, N.Y. Times, https://perma.cc/TDA6-UD9S (last updated Feb. 18, 2025).

*Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 13 (D.D.C. 2019) (concluding that irreparable harm occurs on "each day" that a nationally significant debate "move[s] forward without an informed public able to access relevant information"); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 41 (similar).

The webpage purge similarly hampers Plaintiffs' ability to engage in other rapidly evolving policy debates. For instance, in response to recent Trump Administration executive orders designed to dramatically expand logging on federal lands, NRDC is seeking to quickly and effectively explain how increased logging would harm communities and the environment. *See* Rose Decl. ¶ 9. However, because USDA removed documentation detailing analytics about old-growth and mature forests on federal lands, as well as a related interactive tool, NRDC now lacks vital resources it could have used to efficiently "analyze and publicize the potential consequences" of the executive orders, impeding its participation in another "fast-moving public debate." *Id.* ¶¶ 9–10, 12.

Finally, Plaintiffs are under imminent threat of further harm because they continue to rely on still-published webpages that fall within the scope of the January 30, 2025, directive. Should USDA remove additional climate-change-focused webpages, NOFA-NY's educators will be deprived of "reliable, science-based information about Northeast-specific [climate-change-related] vulnerabilities," Craig Decl. ¶ 13, NRDC will lose access to webpages that inform its wildfire-related policy work, Rose Decl. ¶ 14, and EWG will be unable to ensure that conservation practices that receive billions of dollars in USDA funding are supported by rigorous science, Schechinger Decl. ¶ 13. The likelihood that these webpages will be removed alongside the dozens of similar pages that have already been purged is another independent reason Plaintiffs have shown a likelihood of irreparable injury. *See New York v. Trump*, No. 25-cv-

01144 (JAV), 2025 WL 573771, at *25 (S.D.N.Y. Feb. 21, 2025) (noting that "increased risk of negative consequences is sufficient to meet the irreparable harm requirement for a preliminary injunction" because a court must determine whether there is a "threat" of irreparable harm, not whether "irreparable harm has already occurred" (cleaned up)).

Accordingly, Plaintiffs are likely to continue suffering irreparable harm absent an order preliminarily restoring USDA's climate-change-focused webpages and preventing the removal of additional climate-change-focused webpages.

### III.    The balance of equities and the public interest support preliminary injunctive relief.

The balance of equities and the public interest also weigh strongly in favor of granting a preliminary injunction.

"In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the public consequences in employing the extraordinary remedy of injunction." *New York v. Trump*, 2025 WL 573771, at *26 (citation omitted). This balance tips decisively in Plaintiffs' favor. Whereas Plaintiffs are likely to suffer significant harm due to USDA's unlawful webpage purge, there is no reason to believe that "the restoration of the removed webpages would pose a burden on the [USDA's] ability to engage in [its] work." *Drs. for Am.*, 2025 WL 452707, at *10. None of the webpages identified above contain private or sensitive commercial information whose disclosure might cause harm— indeed, prior to January 31, 2025, all of this information *was* public. Nor is there anything in the January 30 directive to suggest that maintaining the webpages constitutes a significant cost for the Department. Moreover, it is well settled that an agency "cannot suffer any harm from an

injunction that terminates an unlawful practice." *L.V.M.*, 318 F. Supp. at 620. And there is likewise "no public interest in the perpetuation of unlawful agency action." *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018) (cleaned up).

On the other hand, many members of the public would be served by an order restoring webpages that were unlawfully removed. Farmers and farm advisors depend on now-removed digital resources to access financial and technical support for agricultural and operational decisions. *See* Hansch Decl. ¶¶ 8-9; Craig Decl. ¶ 9. Advocates depend on now-removed datasets and interactive tools to study climate change risks and threats to ecosystems. *See* Rose Decl. ¶¶ 7–12. Researchers and other members of the public rely on now-removed USDA webpages for up-to-date and accurate information about the Department's programs and policies. *See* Schechinger Decl. ¶¶ 6–10. Where, as here, the government's removal of information causes widespread harm and frustrates efforts to hold the government accountable, the public interest would be served by an order restoring access to that information. *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 749 (D.C. Cir. 1997) ("[O]penness in government [is] crucial to ensuring that the people remain in control of their government."). Accordingly, the final factor favors granting preliminary injunctive relief.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant a preliminary injunction ordering restoration of all webpages that were removed pursuant to USDA's January 30, 2025, directive and enjoining USDA from removing or substantially modifying additional webpages pursuant to that directive.

Dated: March 17, 2025                    Respectfully submitted,

_____

_____

Jeffrey Stein*
Peter Lehner (PL2290)
Earthjustice
48 Wall Street, 15th Floor
New York, New York 10005
(212) 845-7376
jstein@earthjustice.org

Carrie Apfel (4401790)
Earthjustice
1001 G St. NW, Ste. 1000
Washington, D.C. 20001
(202) 667-4500
capfel@earthjustice.org

Stephanie Krent (5535414)
Jackson Busch*
Alex Abdo (AA0527)
Knight First Amendment Institute at Columbia
  University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
stephanie.krent@knightcolumbia.org

*Application for admission pending       *Counsel for Plaintiffs*

**Certificate of Compliance**

As required by this Court's Rule II(B)(2), I certify that this memorandum of law contains 7,786 words, excluding the caption, table of contents, table of authorities, and signature blocks.

Dated: March 17, 2025                                  Respectfully submitted,

                                                       */s/ Carrie Apfel*