**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NORTHEAST ORGANIC FARMING ASSOCIATION OF NEW YORK, NATURAL RESOURCES DEFENSE COUNCIL, and ENVIRONMENTAL WORKING GROUP, | |
| Plaintiffs, | 25 Civ. 1529 (MMG) |
| v. | |
| U.S. DEPARTMENT OF AGRICULTURE, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2525/2713
Facsimile:  (212) 637-2730

ILAN STEIN
MARK OSMOND
Assistant United States Attorneys
-- Of Counsel --

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................1

    I.       Procedural History ................................................................................................1

    II.      Background .........................................................................................................1

          A.  USDA's Removal of Certain Content from Its Webpages ....................................2

          B.  Plaintiffs' Asserted Reliance on the Removed Content ..........................................4

LEGAL STANDARD.............................................................................................................6

ARGUMENT .......................................................................................................................7

    I.       Plaintiffs Fail to Make a Strong Showing of Irreparable Harm....................................7

    II.      Plaintiffs Fail to State an APA Claim and Cannot Demonstrate a Clear Likelihood of
          Success on the Merits..........................................................................................12

          A.  Plaintiffs Have an Adequate Alternative Remedy Under FOIA............................12

          B.  Plaintiffs Do Not Challenge a Final Agency Action .............................................17

          C.  Plaintiffs Have Not Identified Arbitrary or Capricious Agency Action ...............20

    III.     The Balance of Equities and Public Interest Weight in Favor of the Government......21

CONCLUSION....................................................................................................................23

i

**Page(s)**

**Case**

*6801 Realty Co., LLC v. U.S. Citizenship & Immigr. Servs.*,
No. 15 CIV. 5958 (AMD), 2016 WL 11795589 (E.D.N.Y. Sept. 27, 2016)...........................17

*A.H. by & through Hester v. French*,
985 F.3d 165 (2d Cir. 2021)...................................................................................................6

*Alcresta Therapeutics, Inc. v. Azar*,
318 F. Supp. 3d 321 (D.D.C. 2018)........................................................................................8

*Alegent Health-Immanuel Med. Ctr. v. Sebelius*,
34 F. Supp. 3d 160 (D.D.C. 2014).........................................................................................19

*Am. C.L. Union v. Nat'l Sec. Agency*,
925 F.3d 576 (2d Cir. 2019)..................................................................................................14

*Am. Immig. Council v. U.S. Dep't of Homeland Sec.*,
470 F. Supp. 3d 32 (D.D.C. 2020)..........................................................................................8

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
935 F.3d 858 (9th Cir. 2019) ................................................................................................14

*Bd. of Regents of Univ. of Wis. System v. Southworth*,
529 U.S. 217 (2000)..............................................................................................................22

*Bennett v. Spear*,
520 U.S. 154 (1997)..............................................................................................................18

*Bionpharma Inc. v. CoreRx, Inc.*,
582 F. Supp. 3d 167 (S.D.N.Y. 2022).....................................................................................21

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)..............................................................................................................12

*C.C. v. New York City Dep't of Educ.*,
No. 20-CV-1915 (GBD) (SLC), 2021 WL 4507550 (S.D.N.Y. Sept. 30, 2021) .....................7

*CFPB v. MoneyLion Techs. Inc.*,
No. 22-cv-8308 (JPC), 2025 WL 893684 (S.D.N.Y. Mar. 24, 2025)................................20, 21

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*,
846 F.3d 1235 (D.C. Cir. 2017) ......................................................................................passim

*City of N.Y. v. U.S. Dep't of Def.*,
   913 F.3d 423 (4th Cir. 2019) ....................................................................... 12, 17

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006) ............................................................................. 18

*Coney Island Prep v. U.S. Dep't of Health and Human Servs.*,
   506 F. Supp. 3d 203 (S.D.N.Y. 2020)................................................................. 7, 11

*Council of and for the Blind v. Regan*,
   709 F.2d 1521 (D.C. Cir. 1983) ....................................................................... 12, 16

*Davis v. Pension Ben. Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ........................................................................21-22

*Drs. for Am. v. Off. of Pers. Mgmt.*,
   No. CV 25-322 (JDB), 2025 WL 452707 (D.D.C. Feb. 11, 2025)............................. 8

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   396 F.3d 1265 (D.C. Cir. 2005) ........................................................................... 13

*Entero v. Fed. Emergency Mgmt. Agency*,
   No. 5:21-CV-71, 2023 WL 6014397 (S.D. Tex. June 12, 2023)....................... 15, 17

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)............................................................................................ 20

*Friends of Cap. Crescent Trail v. Fed. Transit Admin.*,
   No. CV 17-1811 (RJL), 2019 WL 1046889 (D.D.C. Mar. 5, 2019) ........................ 18

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) ......................................................................... 12, 16

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007)..................................................................................... 6

*Hawkinson v. Immigr. & Customs Enf't*,
   554 F. Supp. 3d 253 (D. Mass. 2021) .............................................................. 13, 16

*Heritage Found. v. U.S. Dep't of State*,
   No. 24-2862 (TJK), 2024 WL 4607501 (D.D.C. Oct. 29, 2024)............................... 8

*Immerso v. U.S. Dep't of Labor*,
   No. 19-CV-3777 (NGG) (VMS), 2020 WL 6826271 (E.D.N.Y. Nov. 20, 2020).................. 15

*Korsinsky v. Dudas,*
    227 F. App'x 891 (Fed. Cir. 2007) ....................................................................... 19

*Korsinsky v. Godici,*
    No. 05-CV-2791 (DLC), 2005 WL 2312886 (S.D.N.Y. Sept. 22, 2005) ................................. 19

*Larson v. United States,*
    888 F.3d 578 (2d Cir. 2018) ............................................................................ 12

*Local 553, Transport Workers Union of Am., AFL-CIO v. Eastern Air Lines, Inc.,*
    695 F.2d 668 (2d Cir. 1982) ............................................................................. 9

*Manker v. Spencer,*
    No. 3:18-CV-372 (CSH), 2019 WL 5846828 (D. Conn. Nov. 7, 2019) ................................ 12

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.,*
    990 F.3d 834 (4th Cir. 2021) ....................................................................... 18, 19

*New York v. U.S. Dep't of Homeland Sec.,*
    969 F.3d 42 (2d Cir. 2020) ............................................................................. 7

*N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals,*
    987 F.3d 207 (2d Cir. 2021) ..................................................................... passim

*Nken v. Holder,*
    556 U.S. 418 (2009) .................................................................................. 21

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ................................................................................ 17, 19

*Pleasant Grove City, Utah v. Summum,*
    555 U.S. 460 (2009) .................................................................................. 22

*Pueblo Entero v. Fed. Emergency Mgmt. Agency,*
    2023 WL 4906607 (S.D. Tex. Aug. 1, 2023) ........................................................... 15

*Students for Fair Admissions v. United States Mil. Acad. at W. Point,*
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) ................................................................. 9

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ................................................................................ 18, 19

*Wickapogue 1 LLC v. Blue Castle (Cayman) Ltd.,*
    657 F. Supp. 3d 234 (E.D.N.Y. 2023) ................................................................. 9

iv

*Winter v. Nat'l Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...................................................................................................... 6

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ..................................................................................... 6

**Rules**

Fed. R. Civ. P. 4(i)(1)-(2) ............................................................................................. 2

Federal Rule of Civil Procedure 65(c) ....................................................................... 23

**Statutes**

5 U.S.C. § 551(13) ...................................................................................................... 17

5 U.S.C. § 552 .............................................................................................................. 13

5 U.S.C. § 552(a)(2) ...................................................................................................... 2

5 U.S.C. § 552(a)(2)(A)-(E) ........................................................................................ 14

5 U.S.C. § 552(a)(4)(B) ............................................................................................... 14

5 U.S.C. § 704 ........................................................................................................ 12, 17

5 U.S.C. § 706(2)(A) ................................................................................................... 20

44 U.S.C. § 3506(d)(1) ................................................................................................ 20

**PRELIMINARY STATEMENT**

Plaintiffs seek a preliminary injunction directing the United States Department of Agriculture ("USDA" or "Government") to re-publish climate change-related web content that USDA archived or unpublished to comply with recent executive orders and align public-facing webpages with the current administration's policy priorities. The Administrative Procedure Act ("APA") does not compel the relief that Plaintiffs seek, and Plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction. First, Plaintiffs have failed to make a strong showing of irreparable harm. The harms they assert are too speculative, insufficiently severe, or easily remedied without preliminary injunctive relief. Second, Plaintiffs have failed to show a clear or substantial likelihood of success on the merits of their APA claims, the only claims relevant to the pending motion. The APA is available only when another statute does not provide adequate relief and when the plaintiff seeks review of a final agency action. Here, the Freedom of Information Act ("FOIA") provides adequate relief, and the removal of certain climate-related web content does not constitute a final agency action. Plaintiffs therefore fail to state a plausible APA claim. Third, the balance of equities and the public interest favor the Government, providing an independent reason to deny Plaintiffs' request. The Government and the public have a strong interest in allowing an incoming administration to implement its policy priorities and to have public-facing Government webpages reflect those priorities, and that interest substantially outweighs any interests Plaintiffs assert in climate-related content on USDA's webpages.

For these reasons, the Court should deny Plaintiffs' request for a preliminary injunction.

**BACKGROUND**

**I.    Procedural History**

Plaintiffs commenced this case on February 24, 2025, asserting claims under FOIA's

proactive-disclosure provision, 5 U.S.C. § 552(a)(2), and under the APA.[1] *See* Dkt. No. 1 ("Compl."). On March 17, 2025, Plaintiffs moved for a preliminary injunction—based on their APA claims only—asking that the Court direct the USDA to restore "all webpages that were removed pursuant to [a] January 30, 2025, directive and enjoining USDA from removing or substantially modifying additional webpages pursuant to that directive." Dkt. No. 16 ("Pl. Br.") at 31. This Office was not served with the Complaint until March 27, 2025. *See* Fed. R. Civ. P. 4(i)(1)–(2).

## II.    Background

### A.    USDA's Removal of Certain Content from Its Webpages

On January 20, 2025, President Trump rescinded various executive orders and directives of the previous administration, including on matters related to climate change. Declaration of Brian Mabry dated March 31, 2025 ("Mabry Decl.") ¶ 6. That afternoon, the Acting Deputy Secretary of Agriculture and USDA Chief Information Officer instructed the Acting Director of the USDA's Office of Communications to update the USDA's public-facing websites and intranet, including by removing pictures and biographies of Biden administration officials and other references to the Biden administration. *Id.* Such requests to remove content associated with the previous administrations are typical of presidential transitions. *Id.* ¶ 7. On January 22, 2025, the Acting Secretary distributed a request from the Office of Personnel Management ("OPM") for information related to federal agencies' compliance with recently issued executive orders, including those related to climate change. *Id.* ¶ 10. On January 27, OPM urged agencies to finalize changes to public-facing websites to conform with those executive orders. *Id.* ¶ 11.

---

[1] Plaintiffs' APA claims are largely premised on their allegations that USDA's conduct violated certain provisions of the Paperwork Reduction Act and was therefore unlawful. *See, e.g.*, Compl. ¶¶ 5, 12–13, 45–50.

2

In response, and as part of USDA's efforts to replace content related to the prior administration's policy priorities, Office of Communications leadership sent an email on January 30 to the Public Affairs Directors at the USDA's 18 agencies with instructions to (1) identify and archive or unpublish any landing pages focused on climate change, and (2) identify all web content related to climate change and document it in a spreadsheet for the Office of Communications' review. *Id.* ¶ 12; *see* https://www.usda.gov/agencies (listing USDA's 18 agencies). On January 31, the Acting Director of the Office of Communications emphasized that no climate change-related content should be deleted but should instead be archived, and requested that agencies compile a list of links to webpages that contain such content and convey their recommendations as to whether the content should remain active or be archived or unpublished. Mabry Decl. ¶ 13. Upon receipt of the requested lists, on or about February 4, leaders in the Office of Communications reviewed the relevant content and decided, subject to agencies' concurrence, which content would remain active and which would be archived or unpublished. *Id.* ¶ 14. In making those determinations, they "sought to retire outdated content (for example, blog posts that were more than 10 years old) or content for programs and topics inextricably linked to the prior administration." *Id.* They focused on what they "considered political/policy material while preserving research-related materials as well as Press Releases." *Id.* By February 6, the Office of Communications had issued recommendations to the various USDA offices regarding how to handle each webpage listed in the spreadsheets, *id.* ¶ 15, some of which consisted of interactive climate-related "tools," including Climate Hubs, Conservations Concerns Tool, COMET-Farm Tool, COMET-Planner Tool, and Climate Risk Viewer, *id.* ¶ 16.

None of the content that was removed has been destroyed; instead, the removed content was archived or unpublished and remains accessible to USDA. *Id.* ¶ 21. In addition, much of the

content that Plaintiffs allegedly relied on remains publicly available on archive.org. *See* Compl. Ex. A to Ex. Y (annexing removed materials that were retrieved from archive.org). With respect to interactive tools, contrary to Plaintiffs' allegations, tools known as Climate Hubs and Conservations Concerns Tool were never removed and remain publicly available. *Id.* ¶ 17. COMET-Farm and COMET-Planner Tool are not USDA-hosted tools but instead are operated and maintained by third parties and remain publicly available online. *Id.* Similarly, the Climate Risk Viewer was hosted on the website of a third-party, ArcGIS, not USDA. *Id.* And while Plaintiffs are correct that USDA removed certain information relating to funding opportunities that had previously been available to farmers, the funding information that was removed primarily relates to funding programs that are currently frozen, pending review by the new administration. *Id.* ¶ 18. USDA did not seek to remove content relating to funding opportunities that are currently available to farmers, and information about various conservation programs remain available. *Id.*

At this time, USDA has no plans to remove additional climate-related content from its webpages. *Id.* ¶ 19. While USDA would comply with future directives, consistent with the law, it is not aware of any executive orders, OPM guidance, or other directives that would require USDA to further amend its public-facing websites. *Id.*

### B.    Plaintiffs' Asserted Reliance on the Removed Content[2]

Plaintiff Northeast Organic Farming Association of New York ("NOFA-NY") is a non-profit organization that seeks to support organic and climate-smart farming. Declaration of Marcie Craig dated March 14, 2025, Dkt. No. 16-1 ("Craig Decl.") ¶¶ 2–3. NOFA-NY operates a telephone hotline through which it provides farmers with technical assistance on agricultural

---

[2] By presenting Plaintiffs' factual assertions in this section, the Government does not expressly or implicitly concede their accuracy.

practices and related USDA programs. *Id.* ¶ 4. NOFA-NY also seeks to educate the public about the importance of USDA programs related to organic and climate-smart agricultural practices. *Id.* ¶¶ 4–6. NOFA-NY asserts that its staff has relied on USDA webpages to inform farmers about conservation-related loan programs, *id.* ¶¶ 8–9, as well as to "educate the public and members of Congress about the importance of defending USDA programs and restoring promised funds," *id.* ¶ 15. One NOFA-NY member, Corinne Hansch, an organic farmer in New York, asserts that she relies on government funding to support her farm, and may require accurate and timely information regarding federal farm loan programs to support a planned expansion of her farm. Declaration of Corinne Hansch dated March 13, 2025, Dkt. No. 16-2 ("Hansch Decl.") ¶¶ 1, 6–9. Although she has "applied for a state grant," if that application fails, she may "need to quickly figure out which USDA farm loan programs can fund our planned expansions." *Id.* ¶ 9.

Plaintiff Natural Resources Defense Council ("NRDC") is a non-profit organization that "engages in research, advocacy, media, and litigation related to protecting public health and the environment." Declaration of Jeffrey McManus dated March 14, 2025, Dkt. No. 16-3 ("McManus Decl.") ¶ 2. NRDC asserts that it has relied on various USDA webpages to support its advocacy work, including for names and locations of federal funding recipients. *Id.* ¶¶ 8–9. According to NRDC, the removal of certain USDA web content makes it more difficult to monitor the efficacy of clean energy programs, educate the public and lobby Congress on these programs, and help rural energy cooperatives seek funds. *Id.* ¶¶ 11–19. It also hinders NRDC's advocacy aimed at protecting mature and old-growth trees and forests. Declaration of Garrett Rose dated March 14, 2025, Dkt. No. 16-4 ("Rose Decl.") ¶¶ 5, 7–10. For example, NRDC asserts that it has previously relied on the Climate Risk Viewer, which "aggregate[d] useful climate-related data and other ecosystem information," and might help analyze consequences of shifts in logging policy on

federal lands. *Id.* ¶¶ 10-12.

The Environmental Working Group ("EWG") is a nonprofit that focuses on the threats that industrial agricultural practices pose for public health and the environment. Declaration of Anne Schechinger dated March 14, 2025, Dkt. No. 16-5 ("Schechinger Decl.") ¶ 2. EWG allegedly relies on USDA webpages to analyze resource allocation decisions and their environmental impacts. *Id.* ¶ 3. It assesses, among other things, how USDA uses funds from the Inflation Reduction Act to support conservation programs. *Id.* ¶¶ 4–8. The removal of certain USDA web content has allegedly hindered EWG's advocacy efforts. *Id.* ¶¶ 9–12.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It is "one of the most drastic tools in the arsenal of judicial remedies," and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citations omitted). To demonstrate its entitlement to this "extraordinary and drastic remedy," *id.*, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, . . . (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor," *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quotation marks and citations omitted). Where, as here, a movant seeks "to modify the status quo by virtue of a 'mandatory preliminary injunction' (as opposed to seeking a 'prohibitory preliminary injunction' to maintain the status quo)," the "standard for obtaining preliminary injunctive relief is higher." *Id.* (quoting *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (emphasis omitted)). In that case, "the movant must . . . make a *strong* showing of irreparable harm and demonstrate a *clear or substantial* likelihood of success on the

merits." *Id.* (emphasis added; quotation marks and citations omitted).

Finally, "[i]t is unnecessary to proceed through the entire preliminary injunction analysis after the Court finds that a necessary element is not met." *C.C. v. New York City Dep't of Educ.*, No. 20-CV-1915 (GBD) (SLC), 2021 WL 4507550, at *7 (S.D.N.Y. Sept. 30, 2021), *objections overruled*, 2022 WL 522423 (S.D.N.Y. Feb. 22, 2022), *aff'd*, No. 22-0459, 2023 WL 2545665 (2d Cir. Mar. 17, 2023). For example, if "a party moving for a preliminary injunction cannot establish irreparable harm, there is 'no need' for the court to consider that party's likelihood of success on the merits, and the application may be denied." *Id.* (citation omitted). "Similarly, where the court finds there is not a likelihood of success on the merits of the claim, it is 'not necessary' to consider irreparable harm, the balance of the equities or the public interest in granting the injunction." *Id.* (citation omitted).

## ARGUMENT

### I.    Plaintiffs Fail to Make a Strong Showing of Irreparable Harm

Plaintiffs' motion fails because, far from making the requisite strong showing of irreparable harm, Plaintiffs' asserted injuries are speculative, insufficiently severe, or mitigated by the ongoing availability of relevant web content, whether on USDA's webpages or elsewhere online. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) (plaintiffs must show an "injury that is neither remote nor speculative, but actual and imminent," and that "cannot be remedied by an award of monetary damages") (internal quotation marks and citation omitted). Where, as here, the alleged injuries relate to nondisclosure of information, a finding of irreparable harm may exist when a plaintiff shows that "absent preliminary injunctive relief, the lack of information substantially impairs the plaintiff in a manner that is both certain and great." *Coney Island Prep v. U.S. Dep't of Health and Human Servs.*, 506 F. Supp. 3d 203, 209 (S.D.N.Y. 2020) (citation and

alterations omitted). That is doubly true insofar as Plaintiffs primarily allege procedural violations—namely, alleged lack of notice. *See, e.g.*, Compl. ¶¶ 1, 5, 13, 46; *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 327 (D.D.C. 2018) ("procedural injury accompanied by harm that is concrete but not 'great' . . . does not equate to irreparable harm").

Plaintiffs themselves acknowledge that the irreparable harm standard is demanding in cases involving alleged informational harm. *See* Pl. Br. 21 (irreparable harm must be "certain and great" (quoting *Drs. for Am. v. Off. of Pers. Mgmt.*, No. CV 25-322 (JDB), 2025 WL 452707, *8 (D.D.C. Feb. 11, 2025)), and the withheld information must thwart "efforts to inform and impact a rapidly evolving discussion of national consequence," *id.* (quoting *Am. Immig. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020)). As one court has observed, it is "rare that *any* preliminary relief is appropriate" in cases involving alleged informational injury; such relief is appropriate only where the withheld information is "time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost." *Heritage Found. v. U.S. Dep't of State*, No. 24-2862 (TJK), 2024 WL 4607501, at *4 (D.D.C. Oct. 29, 2024) (internal quotation marks omitted).

Many of Plaintiffs' alleged injuries are too speculative or insufficiently severe to justify the extraordinary remedy that Plaintiffs seek. For example, Plaintiffs assert that "NOFA-NY and its members . . . need access to the now-removed webpages to facilitate immediate and consequential decisions about farming investments." Pl. Br. 22. NOFA-NY claims that its staff are "acutely affected" by their inability to access "multiple FSA and Farmers.gov webpages about financing climate-smart agriculture practices through farm loan programs . . . as they are currently advising farmers on planting and operational decisions that must be made before the warmer months arrive." *Id.* (quoting Craig Decl. ¶ 9). But that presumes that (1) the information that is

critical to planting and operational decisions is unavailable elsewhere, (2) NOFA-NY's clients cannot wait to make the investments and planting decisions that allegedly rely on the removed information, (3) the information relates to funding programs that are not frozen but are currently available to Plaintiffs, and (4) any harm suffered by NOFA-NY's clients could not be remedied through the normal course of litigation.

Plaintiffs fail to present adequate evidence to establish that any of those presumptions are true. Plaintiffs do not offer any detail to support their assertion that the relevant information is critical to their decision-making progress. They similarly do not explain why they cannot obtain the information elsewhere, and what specific harms might flow from any inconvenience attendant to having to seek the information elsewhere. In any event, "[p]ersonal inconvenience is not the irreparable harm that warrants preliminary injunctive relief." *Local 553, Transport Workers Union of Am., AFL-CIO v. Eastern Air Lines, Inc.*, 695 F.2d 668, 677 (2d Cir. 1982). To the extent the removal of certain information will cause delays in farmers' investment and planting decisions, Plaintiffs must explain why those delays might result in immediate, irreparable harm. They fail to do so. Nor do they explain why any lost investment opportunities for farmers would support preliminary injunctive relief, given that monetary damages are typically available for lost investment opportunities. *See, e.g.*, *Wickapogue 1 LLC v. Blue Castle (Cayman) Ltd.*, 657 F. Supp. 3d 234, 240 (E.D.N.Y. 2023) (lost investment opportunity not irreparable harm because it is compensable by money damages); *cf. Students for Fair Admissions v. United States Mil. Acad. at W. Point*, 709 F. Supp. 3d 118, 137 (S.D.N.Y. 2024) (concluding that there was "significant time to remedy" the alleged injury where plaintiffs could apply to the U.S. Military Academy in the future), *appeal withdrawn*, No. 24-40, 2024 WL 1494896 (2d Cir. Feb. 13, 2024).

Moreover, Plaintiffs do not assert that the removed web content relates to funding

opportunities that are active. Contrary to Plaintiffs' suggestions, the funding information that was intentionally removed from USDA webpages relates primarily to funding programs that are currently frozen. Mabry Decl. ¶ 18. USDA did not seek to remove content relating to currently available funding programs, and information about various conservation programs remains available online. *Id.* Plaintiffs cannot establish that they were harmed based on the removal of content for programs that are presently unavailable, much less the sort of irreparable harm that might justify the extraordinary relief that Plaintiffs seek.

Plaintiffs similarly cannot establish irreparable harm in connection with their public advocacy work. Plaintiffs claim that the removal of certain climate content has compromised their advocacy efforts, as well as their ability to provide reliable information to the public and to assist individuals seeking funds. *See* Pl. Br. 24; Craig Decl. ¶¶ 6, 10–11; McManus Decl. ¶¶ 17–18. But Plaintiffs do not explain how irreparable injury flows from these alleged obstacles. Although Plaintiffs contend that the unavailability of climate content on USDA's webpages makes them less informed commentators on issues of public concern and less effective advocates, *see* Pl. Br. 23–25; Rose Decl. ¶¶ 9–10; Craig Decl. ¶ 15, they do not present evidence of any concrete harm, much less irreparable injury. They do not explain which members of Congress they would have been able to educate but for the removal of the relevant content, which specific content they would have relied upon to lobby members of Congress, or why they think their advocacy efforts would have been more likely to affect policy if USDA had not removed the content at issue. NOFA-NY, NRDC, and EWG do not advance any evidence that their membership has declined as a result of the challenged actions. They do not allege that they are unable to continue to advocate on behalf of their policy preferences. Simply put, they do not explain why a preliminary injunction is necessary, nor have they presented evidence to support their assertion that the issues they raise are

central concerns to the public. Instead, they ask the Court to speculate about ways in which the removed content might hinder their advocacy efforts.

In addition to being speculative, most of the alleged harms are mitigated by the continued availability of the climate-related content at issue. Indeed, many of the allegations in the Complaint that reference removed content also reference archived versions of that same content, which Plaintiffs have annexed to their Complaint. *See, e.g.*, Compl. ¶¶ 28 (citing Ex. A), 29 (citing Exs. B–D), 30 (citing Exs. E–I), 31 (citing Exs. J–M), 32 (citing Exs. N–S), 33 (citing Exs. T, U), 34 (citing Exs. V–Y). Meanwhile, various of the interactive tools that Plaintiffs discuss remain available to them, either on USDA's webpages, *see* Mabry Decl. ¶ 17 (Climate Hubs and Conservation Concerns Tool remain publicly available on USDA webpages), or third-party websites, *see id.* (COMET-Farm Tool and COMET Planner Tool continue to be maintained on non-USDA websites). The continued availability of this information belies any claim of "certain" and "great" injury. *Coney Island Prep.*, 506 F. Supp. 3d at 209.

Finally, Plaintiffs assert that they "continue to rely on still-published webpages that fall within the scope of the January 30, 2025 directive." Pl. Br. 25. They speculate that that content may be removed in the future and ask this Court to preliminarily enjoin USDA from doing so. *Id.* Yet they provide no evidence that removal of those additional websites is likely to occur. And the declaration of Brian Mabry explains that USDA has no current plans to remove any additional content or to conduct any additional reviews of climate-related content on the USDA's webpages. Mabry Decl. ¶ 19.

Plaintiffs' asserted future injuries, like their allegations of past injuries, are speculative and therefore do not justify the extraordinary remedy that Plaintiffs seek.

11

## II.    Plaintiffs Fail to State an APA Claim and Cannot Demonstrate a Clear Likelihood of Success on the Merits

The APA "'does not provide review for everything done by an agency.'" *Manker v. Spencer*, No. 3:18-CV-372 (CSH), 2019 WL 5846828, at *11 (D. Conn. Nov. 7, 2019) (quoting *City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019)). Instead, the APA provides a right of action only for review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiffs here fail to state an APA claim because (1) FOIA provides them with an adequate remedy and (2) the removal of web content was not a final agency action under the APA. Further, while the Court need not reach the issue, Plaintiffs have not identified any arbitrary and capricious agency action. For these reasons, Plaintiffs have failed to state a plausible APA claim, and they have certainly not demonstrated a clear likelihood of success on the merits.

### A.    Plaintiffs Have an Adequate Alternative Remedy Under FOIA

Because FOIA provides Plaintiffs with an adequate remedy, review under the APA is unavailable. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Thus, when Congress has created "'special and adequate review procedures'" under other statutes, judicial review under the APA is unavailable. *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018) (quoting *Bowen*, 487 U.S. at 903). To be adequate, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted). Alternative relief may be adequate even if it is "less effective in providing systemic relief." *Id.* at 525 (quotation marks omitted); *accord Council of and for the Blind v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) (en banc) (even if the APA "would be more effective . . . that does not mean that the [alternative] remedy provided by Congress is inadequate" (emphasis omitted)).

12

In addition, when the "'alternative . . . provides for de novo district-court review of the challenged agency,'" courts have found "'evidence of Congress's will'" to preclude relief under the APA "'given the frequent incompatibility between de novo review and the APA's deferential standards.'" *Hawkinson v. Immigr. & Customs Enf't*, 554 F. Supp. 3d 253, 282 (D. Mass. 2021) (alterations and some quotation marks omitted) (quoting *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) ("*CREW*")); *see also El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("where a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded because 'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA.'" (citation omitted)).

FOIA, which is codified at 5 U.S.C. § 552, "establishes the public's right to access to government information." *N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 209 (2d Cir. 2021) ("*NYLAG*") (citing 5 U.S.C. § 552); *see* Compl. ¶ 18. FOIA requires government agencies to disclose information in three different ways. *Id.* First, section 552(a)(1) "requires agencies to publish certain information in the Federal Register, including descriptions of the agency's organization, rules of procedure, and substantive rules of general applicability." *Id.* Second, section 552(a)(2)—the so-called "reading room" provision—requires agencies to proactively make the following materials publicly available:

> (A) agency "final opinions" and "orders,"
> (B) "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register,"
> (C) "administrative staff manuals and instructions to staff that affect a member of the public,"
> (D) documents that have been released pursuant to FOIA, that have been requested three or more times, or that the agency determines "have become or are likely to become the subject of subsequent requests for substantially the same records," and

(E) "a general index of the records referred to under subparagraph (D)."

5 U.S.C. § 552(a)(2)(A)–(E); *NYLAG*, 987 F.3d at 209–10. While agencies were previously required to keep such records in a "physical 'reading room' housed in the agency and open to the public," agencies are now instead "required to make those documents available online." *NYLAG*, 987 F.3d at 210. Third, under section 552(a)(3)—the provision under which most FOIA litigation arises—agencies must produce identifiable records in response to specific requests from the public. *Id.*

FOIA creates "a private right of action in federal district court to enforce these obligations." *Id.* FOIA's so-called remedial provision, codified at section 552(a)(4)(B), empowers district courts to enjoin agencies "from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)). The Second Circuit has held that this provision allows litigants to demand not only that records be produced to them under section 552(a)(3) but also to make records subject to FOIA's reading-room provisions "available to the public" online. *Id.* at 209. "District courts must review an agency's decision to withhold records *de novo* to ensure that the decision complies with FOIA's substantive requirements." *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 585 n.7 (2d Cir. 2019).

Courts have repeatedly dismissed APA claims involving access to agency records on the ground that FOIA provides adequate relief. *See, e.g.*, *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 935 F.3d 858, 877 (9th Cir. 2019) (affirming dismissal of APA claims based on agency's removal of online databases and holding that "[b]ecause FOIA authorizes district courts to order agencies to comply with the reading-room provision and supplies the standard for reviewing such claims, the potential for meaningful relief under FOIA displaces the APA's catch-all cause of

action"); *CREW*, 846 F.3d at 1245–46 (holding that "FOIA offers an 'adequate remedy' within the meaning of [the APA] such that [plaintiff's] APA claim"—based on the government's refusal to make records available in an online database—"is barred"); *Entero v. Fed. Emergency Mgmt. Agency*, No. 5:21-CV-71, 2023 WL 6014397, at *15 (S.D. Tex. June 12, 2023) ("FOIA provides an adequate alternative remedy to the relief available under the APA. Permitting Plaintiff's claims under the APA would counter a clear congressional intent to deny duplicative remedies."), *adopted sub nom. La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 2023 WL 4906607 (S.D. Tex. Aug. 1, 2023); *Immerso v. U.S. Dep't of Labor*, No. 19-CV-3777 (NGG) (VMS), 2020 WL 6826271, at *8 (E.D.N.Y. Nov. 20, 2020) ("Courts to consider the issue, including six circuit courts, have consistently held that dissatisfied FOIA requesters may not seek disclosure of records under the APA, because FOIA provides for an adequate alternative remedy: 'precisely the kind of special and adequate review procedure that Congress immunized from duplicative APA review.'" (quoting *CREW*, 846 F.3d at 1246) (collecting cases)), *aff'd*, No. 20-4064, 2022 WL 17333083 (2d Cir. Nov. 30, 2022).

There is no reason to depart from this approach here. Under Second Circuit precedent, FOIA permits Plaintiffs to request that agency records subject to FOIA's reading-room provision be made publicly available online. *NYLAG*, 987 F.3d at 209. Plaintiffs themselves allege that the USDA's removal of web content violated the FOIA's reading-room provisions—the very same conduct that gives rise to the alleged APA violations. Compl. ¶ 5. For any material not subject to FOIA's reading room provisions, Plaintiffs may submit FOIA requests to the USDA and ask that those records be produced to them individually under section 552(a)(3). *NYLAG*, 987 F.3d at 210.

Plaintiffs may argue that relief under FOIA is not "adequate" because it is narrower in scope than the relief they seek under the APA. FOIA, for example, would not authorize the Court

to order that the USDA restore removed websites wholesale or to enjoin the USDA from making further revisions to "climate-change-focused webpages." Compl., Prayer for Relief ¶¶ (B)–(C); Pl. Br. 2. But FOIA "need not provide relief identical to relief under the APA" to be adequate; it is enough that the "relief [is] of the 'same genre.'" *Garcia*, 563 F.3d at 522; *Hawkinson*, 554 F. Supp. 3d at 281–82 ("[E]ven if the type of relief sought . . . [under the APA is] not available under FOIA, the statute may nevertheless provide an 'adequate remedy' that precludes a claim under the APA."). The relief is plainly of the same genre here, as FOIA provides a mechanism for Plaintiffs to request the records at issue and to assert that the agency should make publicly available any records subject to the reading-room provisions. Even if relief under the APA "would be *more effective* . . . , that does not mean that the remedy provided by Congress is *inadequate*." *Council of and for the Blind*, 709 F.2d at 1532 (emphasis in original). Indeed, the plaintiff in *CREW* brought APA and FOIA claims based on the government's refusal to post certain records online. The D.C. Circuit dismissed the APA claims after finding that FOIA provided an adequate remedy, even though the court also concluded—unlike the Second Circuit[3]—that courts have "no authority under FOIA to . . . mandat[e] that an agency" make "documents subject to the reading-room provision" publicly available online. *CREW*, 846 F.3d at 1243. That FOIA allowed the plaintiff to request the mere production of the records was an "adequate remedy," even though the plaintiff wanted an injunction directing that the documents be made "available to the public." *Id.* at 1240. Even though there was a "gap between the relief sought and the relief FOIA affords," the D.C. Circuit concluded that FOIA offers "precisely the kind of 'special and adequate review procedure'

---

[3] As discussed above, the Second Circuit in *NYLAG* reached the opposite conclusion, finding that FOIA requesters can enforce FOIA's reading room provision by seeking to have information posted publicly online. *See NYLAG*, 987 F.3d at 214, 224 (declining to follow *CREW* and holding that the "remedial provision of FOIA . . . grants district courts the authority to order . . . the agency to make records available for public inspection in an [online] electronic reading room").

that Congress immunized from 'duplicative' APA review." *Id.* at 1244, 1246 (alterations omitted).

Because Second Circuit precedent allows Plaintiffs to request that certain documents be publicly

available online under FOIA's reading-room provision, there is even more reason here to conclude

that FOIA offers an adequate remedy. *See Entero,* 2023 WL 6014397, at *15 (dismissing APA

claims after finding that FOIA offers an "adequate remedy" under both the D.C. Circuit's approach

in *CREW* and the Second Circuit's approach in *NYLAG*).

### B.    Plaintiffs Do Not Challenge a Final Agency Action

Plaintiffs also fail to state an APA claim because they have not alleged a "final agency

action" under the APA. 5 U.S.C. § 704; *6801 Realty Co., LLC v. U.S. Citizenship & Immigr. Servs.*,

No. 15 CIV. 5958 (AMD), 2016 WL 11795589, at *3 (E.D.N.Y. Sept. 27, 2016) ("'[F]inal agency

action' is an essential element of a claim under the APA"). The APA itself defines "agency action"

to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent

or denial thereof, or failure to act." 5 U.S.C. § 551(13). The Supreme Court has recognized that

this provision refers only to conduct that is "circumscribed" and "discrete" and does not

countenance any "broad programmatic attack" on government operations. *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 62–64 (2004). "This distinction between discrete acts, which are

reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the

separation of powers." *City of N.Y.*, 913 F.3d at 431. "If courts were empowered to enter general

orders compelling compliance with broad statutory mandates, they would necessarily be

empowered, as well, to determine whether compliance was achieved—which would mean that it

would ultimately become the task of the supervising court, rather than the agency, to work out

compliance with the broad statutory mandate, injecting the judge into day-to-day agency

management." *Norton*, 542 U.S. at 66–67.

As to the APA's finality requirement, an agency action must meet two criteria to be final: "'First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Here, Plaintiffs have not challenged a discrete final agency action but rather revisions to numerous webpages administered by the USDA and its 18 agencies (*e.g.*, the Forest Service and the Natural Resources Conservation Service) during the new presidential administration. Plaintiffs' own allegations make clear that there was not any one final agency decision, but numerous decisions about how to handle each climate change-related webpage based on commentary from staff at the USDA's 18 agencies. Compl. ¶ 25; Mabry Decl. ¶¶ 13–15. Rather than seek review of a discrete agency action, Plaintiffs challenge USDA's wholesale management of its websites as they relate to climate change, which the APA does not permit (regardless of whether Plaintiffs' claim is grounded in an alleged violation of a statute—here, the Paperwork Reduction Act). *See, e.g.*, *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 841 (4th Cir. 2021) (challenge to agency's "day-to-day agency management" and "'performance' of its statutory duty" cannot form basis of APA claim); *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (APA "does not extend to reviewing generalized complaints about agency behavior," and an "on-going program" is "not, in itself, a final agency action" (quotation marks omitted)); *Friends of Cap. Crescent Trail v. Fed. Transit Admin.*, No. CV 17-1811 (RJL), 2019 WL 1046889, at *9 (D.D.C. Mar. 5, 2019) (general deficiencies in "an agency's obligations" are not a final agency action, even if the "obligations flow from a statute").

Further, USDA's website revisions were not "final" because they were not an "action . . . by which rights or obligations have been determined, or from which legal consequences will flow.'" *Hawkes*, 578 U.S. at 597. Instead, the revisions were part of a revamp of agency websites not unlike those from prior presidential transitions and was intended to ensure that public-facing USDA webpages reflected the priorities of the current administration. Mabry Decl. ¶¶ 7, 9, 12. In *National Veterans Legal Services Program*, where the plaintiffs brought an APA claim based on the agency's temporary removal of decisions from its website, the court rejected the claim because the agency's conduct was "not a *determination* of rights and obligations that would amount to final agency action" and was instead "a decision in furtherance of ongoing website management." 990 F.3d at 841 (emphasis in original). The same is true here.

Finally, if this Court were to conclude that website maintenance constitutes a final agency action under the APA, it would create the very consequence that the "final agency action" limitation is meant to avoid. Specifically, the Court would become "inject[ed] . . . into day-to-day agency management" of government websites and would be tasked with determining whether "compliance" with the Paperwork Reduction Act's "broad statutory mandates" have been "achieved." *Norton*, 542 U.S. at 66–67. The Paperwork Reduction Act ("PRA") itself provides no private right of action. *See, e.g.*, *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 170 (D.D.C. 2014) (PRA "does not create a private cause of action" and may not be used as a "sword to persuade the Court to find the [agency] in violation" but only as a defense in certain circumstances (emphasis omitted)); *Korsinsky v. Godici*, No. 05-CV-2791 (DLC), 2005 WL 2312886, at *6 (S.D.N.Y. Sept. 22, 2005) ("PRA only authorizes litigants to use its protections as a defense—it does not authorize a private right of action."), *aff'd sub nom. Korsinsky v. Dudas*, 227 F. App'x 891 (Fed. Cir. 2007). The Court should not permit Plaintiffs to use the APA as a

19

workaround to create a cause of action unavailable to them under the PRA, nor to advance claims that could lead the judiciary to micromanage agency websites by adjudicating questions such as whether particular webpages constitute "'significant information dissemination product[s]'" and whether agencies provided "'adequate notice'" before updating their websites. Compl. ¶ 13 (citing 44 U.S.C. § 3506(d)(1), (3)).[4]

## C.    Plaintiffs Have Not Identified Arbitrary or Capricious Agency Action

As discussed above, Plaintiffs have not shown a clear likelihood of success on their APA claims—both because FOIA provides them with an adequate remedy and because the removal of web content was not a final agency action. The Court therefore need not reach the question of whether Plaintiffs have identified arbitrary or capricious agency action under 5 U.S.C. § 706(2)(A). But if the Court were to reach the issue, it should conclude that Plaintiffs have failed to identify any arbitrary or capricious conduct. "[T]he APA's requirement that agency action not be arbitrary or capricious is as deferential as it sounds: the 'narrow' judicial review of an agency's substantive decisionmaking contemplated by the APA is only to 'ensure[] that the agency has acted within a zone of reasonableness and . . . has reasonably considered the relevant issues and reasonably explained [its] decision.'" *CFPB v. MoneyLion Techs. Inc.*, No. 22-cv-8308 (JPC), 2025 WL 893684, at *15 (S.D.N.Y. Mar. 24, 2025) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).

As Brian Mabry's declaration explains, certain climate-related webpages on the USDA.gov domain were removed to ensure that the web content aligned with the priorities of the current

---

[4]    *See also* Office of Management and Budget Circular No. A-130, *available at* https://obamawhitehouse.archives.gov/omb/circulars_a130 (giving examples of what may constitute a significant information dissemination product and noting that "[i]n all cases, however, determination of what is a significant information dissemination product and what constitutes adequate notice are matters of agency judgment").

administration and conformed to recently issued executive orders. Mabry Decl. ¶¶ 9, 12. During the last two presidential transitions, there were also significant changes to the USDA website. *Id.* ¶ 7. Changes to the webpages of the USDA's 18 agencies were made only after soliciting input from those agencies. *Id.* ¶ 15. USDA communications leadership prioritized removing outdated content and material inextricably linked to the prior administration, while preserving research-related content and press releases. *Id.* ¶ 14. None of the removed content was destroyed and was instead archived to ensure adherence to agency records-retention obligations. *Id.* ¶¶ 13, 21. The USDA's conduct was well within the "zone of reasonableness" and the agency's conduct has been "reasonably explained" in Mabry's declaration. *CFPB*, 2025 WL 893684, at *15. Plaintiffs have therefore failed to identify an arbitrary or capricious agency action.

## III.    The Balance of Equities and Public Interest Weigh in Favor of the Government

The final two factors, balance of equities and the public interest, also weigh in the Government's favor. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the Government is the party opposing a motion for preliminary injunctive relief). "In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (internal quotation marks omitted).

As an initial matter, given that Plaintiffs cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Ben. Guar.*

*Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009).

On the merits, the balance of equities and public interest also tip in the Government's favor. On January 20, 2025, the President rescinded various of the previous administration's executive orders, as a valid means of implementing the new administration's own policies and priorities. The rescinded directives included Executive Order 14008 of January 27, 2021 (Tackling the Climate Crisis at Home and Abroad), and Executive Order 14027 of May 7, 2021 (Establishment of the Climate Change Support Office*)*.

The public has an interest in ensuring that the duly elected President has the ability to implement his policy priorities, and that executive branch agencies' public-facing webpages reflect those priorities. One of the ways in which the Executive remains accountable to the people is by clearly and directly communicating the President's policies, and it is well established that a government agency "has the right to 'speak for itself.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) (quoting *Bd. of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000)). Plaintiffs would have this Court prevent the current administration from updating USDA's webpages to reflect the current administration's priorities, and instead to require that USDA continue to present content associated with the prior administration's policies and views. That would displace and frustrate the Government's efforts to accurately portray the current administration's priorities to the American people online. It would threaten, in Plaintiffs' words, to "cause[] significant confusion about the state of USDA policy [priorities]." Pl. Br. 15 (quoting Schechinger Decl. ¶ 10). That harm significantly outweighs the harms alleged by Plaintiffs, which, as argued above, are neither concrete nor irreparable.

For that reason, the balance of equities and public interest tip in favor of the Government.

**CONCLUSION**

Accordingly, the Court should deny Plaintiffs' motion for a preliminary injunction.[5]

Dated: March 31, 2025
New York, New York

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York

By:    */s/ Ilan Stein*
ILAN STEIN
MARK OSMOND
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2525/2713
Email:    Ilan.Stein@usdoj.gov
           Mark.Osmond@usdoj.gov

---

[5] In accordance with Rule 65(c) and the President's March 11, 2025 Memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," to the extent that the Court nevertheless enters a preliminary injunction, the Government respectfully requests that the Court require Plaintiffs to post a bond of $10,000. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); www.whitehouse.gov/presidential[1]actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/.

**<u>Certificate of Compliance</u>**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,288 words.