UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHEAST ORGANIC FARMING ASSOCIATION OF NEW YORK, NATURAL RESOURCES DEFENSE COUNCIL, and ENVIRONMENTAL WORKING GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE,<br><br>Defendant. | Civil Action No. 1:25-cv-01529 (MMG)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Stephanie Krent (5535414)
Jackson Busch (6051668)
Alex Abdo (AA0527)
Knight First Amendment Institute at Columbia
  University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
stephanie.krent@knightcolumbia.org

Jeffrey Stein (5791199)
Peter Lehner (PL2290)
Earthjustice
48 Wall St., 15th Floor
New York, NY 10005
(212) 854-7376
jstein@earthjustice.org

Carrie Apfel (4401790)
Earthjustice
1001 G Street, NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
capfel@earthjustice.org

*Counsel for Plaintiffs*

i

**Table of Contents**

Table of Authorities ............................................................................................................. iii

Introduction .......................................................................................................................... 1

Argument .............................................................................................................................. 2

    I.    Plaintiffs are suffering, and will continue suffering, irreparable harm. ............................ 2

    II.   Plaintiffs are likely to succeed on the merits of their APA claims. ................................... 5

        A.   FOIA does not provide an adequate remedy for violations of the PRA and APA. ...... 5

        B.   USDA's webpage removal decisions are final agency actions. .................................. 7

        C.   USDA's webpage removal decisions were unlawful. .................................................. 8

    III.  The balance of equities and public interest favor plaintiffs. ............................................. 10

    IV.  USDA's bond request should be denied. ......................................................................... 11

Conclusion ........................................................................................................................... 12

Certificate of Compliance .................................................................................................. 14

## Table of Authorities

**Cases**

Page(s)

*Animal Legal Def. Fund v. USDA*,
   935 F.3d 858 (9th Cir. 2019) ...................................................................................................7

*Bennett v. Spear*,
   520 U.S. 154 (1997)..................................................................................................................7

*Brodsky v. U.S. Nuclear Regul. Comm'n*,
   704 F.3d 113 (2d Cir. 2013)......................................................................................................8

*Citizens for Resp. & Ethics in Wash. v. DOJ*,
   846 F.3d 1235 (D.C. Cir. 2017) ................................................................................................6

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020)......................................................................................................................9

*Drs. for Am. v. Off. of Pers. Mgmt.*,
   2025 WL 452707 (D.D.C. Feb. 11, 2025) ....................................................................... passim

*Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*,
   542 F. Supp. 2d 1181 (N.D. Cal. 2008) ....................................................................................3

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016)..................................................................................................................9

*Env't Def. Fund v. Regan*,
   2024 WL 3887383 (D.D.C. Aug. 20, 2024) .............................................................................7

*Ferguson v. Tabah*,
   288 F.2d 665 (2d Cir. 1961)..............................................................................................11, 12

*Hartford Courant Co. v. Carroll*,
   474 F. Supp. 3d 483 (D. Conn. 2020),....................................................................................11

*Hyatt v. OMB*,
   908 F.3d 1165 (9th Cir. 2018) ..................................................................................................6

*L.V.M. v. Lloyd*,
   318 F. Supp. 3d 601 (S.D.N.Y. 2018).....................................................................................10

*Make the Rd. N.Y. v. Pompeo*,
   475 F. Supp. 3d 232 (S.D.N.Y. 2020).....................................................................................10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ........................................................................................................... 8

*Nat. Res. Def. Council v. Dep't of Interior*,
  410 F. Supp. 3d 582 (S.D.N.Y. 2019) ................................................................................. 6

*Nat'l Council of Nonprofits v. OMB*,
  2025 WL 597959 (D.D.C. Feb. 25, 2025) ......................................................................... 11

*Nat'l Treasury Emps. Union v. Vought*,
  2025 WL 942772 (D.D.C. Mar. 28, 2025) ........................................................................... 2

*New York v. Trump*,
  2025 WL 573771 (S.D.N.Y. Feb. 21, 2025) .................................................................... 3, 5

*New York v. U.S. Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020) .................................................................................................. 3

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .............................................................................................................. 8

*Pharm. Soc. of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*,
  50 F.3d 1168 (2d Cir. 1995) .............................................................................................. 11

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ................................................................................................ 3

*Sandvig v. Sessions*,
  315 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................................ 5

*Sharkey v. Quarantillo*,
  541 F.3d 75 (2d Cir. 2008) .................................................................................................. 6

*SPV Osus Ltd. v. UniCredit Bank Austria*,
  2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) ..................................................................... 9

*Valez-Chavez v. McHenry*,
  549 F. Supp. 3d 300 (S.D.N.Y. 2021) ................................................................................. 6

**Statutes**

5 U.S.C. § 552(a)(4)(B) ............................................................................................................. 6, 7
5 U.S.C. § 704 ................................................................................................................................ 7

**Other Authorities**

H.R. Rep. No. 104-37 (1995) ..............................................................................................7, 10

*Memorandum Re: Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)*, The White House (Mar. 11, 2025), https://perma.cc/T27W-E8BG ........................11

*USDA Announces March 2025 Lending Rates for Agricultural Producers*, Farm Serv. Agency (Mar. 3, 2025), https://www.fsa.usda.gov/news-events/news/03-03-2025/usda-announces-march-2025-lending-rates-agricultural-producers .................................................................................................................2

*Your Guide to FSA Farm Loans*, Farm Serv. Agency, https://www.fsa.usda.gov/resources/programs/your-guide-fsa-farm-loans .........................2

## INTRODUCTION

With no public notice and no time for principled decision-making, Defendant U.S. Department of Agriculture ("USDA") removed or rendered inaccessible numerous climate-change-focused webpages. In their motion for a preliminary injunction, Plaintiffs Northeast Organic Farming Association of New York ("NOFA-NY"), Natural Resources Defense Council ("NRDC"), and Environmental Working Group ("EWG") explained that USDA's conduct violates the Administrative Procedure Act ("APA") because it was unreasoned and not in accordance with the Paperwork Reduction Act ("PRA"). Plaintiffs also explained that it causes irreparable harm by thwarting urgently needed services, impeding time-sensitive financial decisions, and frustrating efforts to contribute to fast-moving, significant public debates.

In response, USDA largely shrugs. It does not, for example, claim that these webpage removals comported with the PRA. Nor does it dispute that, when removing these webpages, it failed entirely to consider the public's reliance on the resources in question. Instead, it mischaracterizes its webpage purge as routine "maintenance" and trivializes Plaintiffs' injuries as mere personal inconveniences, ignoring the record to do so. Avoiding the heart of this dispute, it focuses on meritless procedural arguments. It contends that Plaintiffs' APA claims cannot be heard because the Freedom of Information Act ("FOIA") provides the sole remedy in all cases concerning access to government information, disregarding a mountain of precedent to the contrary. It argues that its conduct is not subject to judicial review, but its webpage removals in response to a Departmentwide directive are plainly final agency actions. When USDA finally addresses the merits of Plaintiffs' claims—in a single paragraph—its defense rests on a declaration that only lays bare the slapdash and careless process that resulted in the disappearance of crucial digital resources.

USDA's arguments fail at each turn. This Court should grant preliminary relief.

## ARGUMENT

### I. Plaintiffs are suffering, and will continue suffering, irreparable harm.

USDA's webpage removals thwart Plaintiffs' time-sensitive services, frustrate their farmer-members' urgent decision-making, undermine their ability to effectively carry out their missions, and impede their efforts to inform rapidly evolving public debates. *See* Pls.' Br. 21–26. These are independent irreparable injuries, and USDA's arguments to the contrary are unavailing.

USDA contends that injuries stemming from the need to make time-sensitive farming decisions are "too speculative" to support preliminary relief, USDA Br. 8, but the record belies this assertion. NOFA-NY has concretely explained why its staff and the farmers it serves need access to purged webpages *now*. These webpages were particularly "user-friendly" resources about currently available farm loans.[1] Craig Decl. ¶ 10. Even if information about farm loans may exist elsewhere, removing these resources "make[s] it more difficult for" NOFA-NY to carry out its mission of helping farmers understand and access financing options.[2] *See Nat'l Treasury Emps. Union v. Vought*, 2025 WL 942772, at *15, *42 (D.D.C. Mar. 28, 2025) (finding irreparable harm where removal of government reports would deprive an organization of information it "routinely relies on . . . to carry out its mission"), *appeal docketed*, No. 25-5091

---

[1] *See USDA Announces March 2025 Lending Rates for Agricultural Producers*, Farm Serv. Agency (Mar. 3, 2025), https://www.fsa.usda.gov/news-events/news/03-03-2025/usda-announces-march-2025-lending-rates-agricultural-producers.

[2] *Cf. Your Guide to FSA Farm Loans*, Farm Serv. Agency, https://www.fsa.usda.gov/resources/programs/your-guide-fsa-farm-loans (last visited April 2, 2025) (urging prospective loan applicants to seek assistance from a "community-based organization" when attempting to navigate the byzantine loan process).

(D.C. Cir. 2025). At this time of year, farmers are racing to implement and identify funding for climate-resilient agricultural practices and improvements. *See* Craig Decl. ¶ 9; Hansch Decl. ¶¶ 4, 8. Without the resources they need to make these decisions, they risk losing "an indeterminate amount of business," *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004), or increasing their farms' vulnerabilities to extreme weather, *cf. New York v. Trump*, 2025 WL 573771, at *25 (S.D.N.Y. Feb. 21, 2025) (noting that an "increased 'risk' of negative consequences is sufficient to meet the irreparable harm requirement"). Even if these harms were akin to a mere "lost investment opportunity," USDA Br. 9—and they are not—"because money damages are prohibited in APA actions, they are irreparable." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).

USDA also argues that Plaintiffs have not shown irreparable harm to their participation in public debates, because some (but not all) removed webpages related to so-called "frozen" programs and because Plaintiffs provided insufficient detail about their advocacy plans. USDA Br. 9–11. This is plainly untrue. Plaintiffs' inability to access webpages about "frozen" programs deprives them of information that would help them inform current debates about the fate of those programs. Plaintiffs provided concrete examples demonstrating that the loss of these resources thwarts their public education, congressional outreach, and other advocacy efforts. *See* Craig Decl. ¶¶ 14–15; McManus Decl. ¶¶ 8, 11–19; Schechinger Decl. ¶ 11. By continuing to stifle Plaintiffs' participation in "ongoing public and congressional debates about issues of vital national importance," USDA's webpage removals inflict irreparable harm. *See Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181, 1186 (N.D. Cal. 2008).

Plaintiffs have also demonstrated that USDA's webpage removals harm their ability to serve as "'reliable liaisons' between the public and 'federal resources.'" Pls. Br. 23 (quoting

3

Craig Decl. ¶ 10). Notably, USDA does not contest that this form of harm would be irreparable; rather, it breezily claims that Plaintiffs have not sufficiently "explain[ed]" their injuries. USDA Br. 10. But here, too, the record belies USDA's objection. *See* McManus Decl. ¶¶ 17–18 (detailing frustration of NRDC's plans to facilitate community participation in clean energy programs); Craig Decl. ¶ 11 (explaining that confusion about webpage accuracy thwarts efforts to inform farmers); Schechinger Decl. ¶ 10 (noting that confusion over USDA policy concerning a currently available conservation practice list impedes EWG's public advocacy).

      None of Plaintiffs' harms are mitigated by the existence of the Internet Archive Wayback Machine. USDA Br. 11. Indeed, "[t]he Wayback Machine does not capture every webpage, and there is no information to suggest that it has archived each removed webpage" at issue in this case. *Drs. for Am. v. Off. of Pers. Mgmt.*, 2025 WL 452707, at *8 n.4 (D.D.C. Feb. 11, 2025). USDA does not, for example, claim that the Wayback Machine contains archived versions of the interactive Climate Risk Viewer and its dozens of data layers, *see* Rose Decl. ¶¶ 10–13, or a July 2024 presentation explaining USDA's progress towards developing new emissions reduction estimation methodologies, *see* Schechinger Decl. ¶¶ 7, 11, or each now-removed webpage about USDA's rural clean energy programs, *see* McManus Decl. ¶¶ 8, 11–19. USDA does not suggest that NOFA-NY's farmer-members "know[] that the Wayback Machine exists," let alone that they "ha[ve] recorded . . . pre-removal URL[s]" needed to search the Wayback Machine. *Drs. for Am.*, 2025 WL 452707, at *8 n.4. Nor does USDA explain how *archived* webpages—which may not display the most recent version of a webpage—will reduce Plaintiffs' confusion about

whether information on USDA's webpages is accurate. *See* Pls.' Br. 18, 23. Thus, the Wayback Machine does not cure the harm caused by USDA's unlawful actions.[3]

Finally, USDA's assertion that it has no current "plans" to remove additional climate-change-focused webpages and "views the process" implementing its January 30, 2025, directive "as complete," Mabry Decl. ¶ 19, does not eliminate the threat of further harm from future webpage removals. Notably, USDA's "view" is not a guarantee that it will take no further action pursuant to the January 30, 2025, directive, especially because it declines to provide an "assurance" that other climate-change-focused webpages will "remain static." *Id.* These statements do not ameliorate the "increased risk of negative consequences" that would flow from additional webpage removals. *New York*, 2025 WL 573771, at *25; *cf. Sandvig v. Sessions*, 315 F. Supp. 3d 1, 21 (D.D.C. 2018) (rejecting reliance on an affidavit stating that the government did "not expect" to bring certain prosecutions because "many things that we do not expect in fact come to pass").

Accordingly, Plaintiffs are suffering and are likely to continue suffering irreparable harm absent preliminary injunctive relief.

## II.   Plaintiffs are likely to succeed on the merits of their APA claims.

### A. FOIA does not provide an adequate remedy for violations of the PRA and APA.

USDA makes the novel argument that Plaintiffs cannot challenge its failure to comply with the PRA or its arbitrary and capricious decision-making because all claims seeking access

---

[3] USDA also suggests that Plaintiffs are not harmed because USDA has not removed the Climate Hubs webpage and the Conservation Concerns Tool, USDA Br. 11, but Plaintiffs never alleged that they were removed. Plaintiffs' harm stems from the removal of the webpages identified in their motion and the risk that more webpages will be removed pursuant to the January 30, 2025, directive.

to government information must be brought under FOIA. USDA Br. 12–17. This argument is foreclosed by numerous cases reviewing claims arising under the PRA or other access-to-information statutes through the APA. *See, e.g.*, *Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 599–600 (S.D.N.Y. 2019) (reviewing under APA a claim that an agency failed to comply with the Federal Advisory Committee Act's recordkeeping requirements, even though plaintiffs received some records through a FOIA request); *Hyatt v. OMB*, 908 F.3d 1165, 1171–72 (9th Cir. 2018) (reviewing PRA claim under APA); *Drs. for Am.*, 2025 WL 452707, at *7 (reviewing adequate-notice PRA claim and related arbitrary-and-capricious claim under the APA).

That is because there is a "strong presumption that Congress intends judicial review of administrative action" under the APA, *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008), and to overcome it, an agency must show "clear and convincing evidence" of a "Congressionally-created mechanism that is not only sufficient, but special." *Valez-Chavez v. McHenry*, 549 F. Supp. 3d 300, 303 (S.D.N.Y. 2021). Thus, to displace APA review here, USDA must identify a remedial mechanism "customized by Congress to cover the claims at issue" in this case, *i.e.*, violations of the adequate-notice and equitable-access provisions of the PRA. *Id.*; *see also Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (finding an "adequate remedy" where Congress created "a mechanism for judicial enforcement in the same legislation" as the "agency obligations" undergirding the claims).

Here, there is no such evidence in the text of the PRA *or* FOIA. The PRA contains no "Congressionally-created mechanism" for review, nor does it direct aggrieved parties to FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B). And FOIA does not purport to enable or preclude judicial review of any other statutes. USDA does not explain why, in the face of this statutory

6

silence, its argument is tenable, except that FOIA requires disclosure of government information under certain conditions and contains a remedial provision.

USDA's argument that Plaintiffs also brought FOIA claims, USDA Br. 13–17, is therefore beside the point. True, 5 U.S.C. § 552(a)(4)(B) may preclude APA review over some claims rooted in an agency's failure to comply *with FOIA*. But that is of no moment, because Plaintiffs' APA claims are premised on violations of the PRA and the APA itself—not FOIA.[4] And in any event, FOIA does not adequately remedy violations of the PRA. The two are separate statutes with "different approaches to fulfilling public needs for government information," H.R. Rep. No. 104-37, at 107 (1995); judicial review under one cannot adequately remedy a violation of the other. The same is true for Plaintiffs' arbitrary and capricious claim: because that claim is not premised solely on the removal of records in violation of FOIA, FOIA's statutory remedy is inadequate. *Cf. Animal Legal Def. Fund v. USDA*, 935 F.3d 858, 877 (9th Cir. 2019).

### B. USDA's webpage removal decisions are final agency actions.

The webpage removals at issue in this case are also subject to this Court's review as final agency actions. *See* 5 U.S.C. § 704. USDA's own declarant confirms that the webpage removals marked the consummation of a decision-making process beginning with the January 30, 2025, directive and ending with "determinations" as to "which [webpages] to archive or unpublish." Mabry Decl. ¶¶ 12–15. USDA offers no indication that these determinations were "tentative or interlocutory." *Bennett v. Spear*, 520 U.S. 154, 178 (1997); *cf.* Mabry Decl. ¶ 19. And USDA's removal decisions definitively "determined" Plaintiffs' rights to access information under the PRA. *Drs. for Am.*, 2025 WL 452707, at *6; *Env't Def. Fund v. Regan*, 2024 WL 3887383, at

---

[4] Tellingly, all of the cases cited by USDA involve APA claims premised on violations of FOIA. *See* USDA Br. 14–15.

7

*12 (D.D.C. Aug. 20, 2024) (concluding that an agency "determine[d] rights" where it "fail[ed] to provide Plaintiffs with access" to information to which they were entitled). The removals thus bear the hallmarks of final agency actions.

Resisting this straightforward conclusion, USDA mischaracterizes Plaintiffs' challenge as an attack on "USDA's wholesale management of its websites as they relate to climate change." USDA Br. 18. This is wrong. Plaintiffs do not, for example, "challenge the pace at which [D]efendant[] [is] updating or otherwise maintaining" its climate-related webpages. *Drs. for Am.*, 2025 WL 452707, at *5. Rather, they "seek[] to remedy the complete removal of numerous webpages" undertaken pursuant to a discrete directive. *Id.* These are "circumscribed" agency actions subject to APA review. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

Grasping at straws, USDA also contends that Plaintiffs are using the APA "to create a cause of action unavailable to them under the PRA." USDA Br. 20. Of course, this is true of every claim that a final agency action was not "in accordance with law," claims so numerous that they are considered "garden-variety." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 220 (2012); *see also, e.g.*, *Drs. for Am.*, 2025 WL 452707, at *7; *Brodsky v. U.S. Nuclear Regul. Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013) ("Because [the National Environmental Policy Act] does not itself provide for judicial review, the APA controls."). This case is no different.

### C. USDA's webpage removal decisions were unlawful.

USDA never contests that its actions were defensible under the equitable-access or adequate-notice provisions of the PRA. *See* Pls.' Br. 17–19. And while USDA does address Plaintiffs' claim that its conduct was arbitrary and capricious, it does not contest Plaintiffs' argument that it "completely failed to consider the substantial reliance by farmers, farm advisors,

8

researchers, advocates, and many other members of the public on the removed webpages." *Id*. at 20 (quotation marks omitted). This is more than enough to establish Plaintiffs' likelihood of success on the merits of their claims. *See SPV Osus Ltd. v. UniCredit Bank Austria*, 2019 WL 1438163, at *6 (S.D.N.Y. Mar. 30, 2019) (failure to respond to arguments constitutes waiver).

In any event, USDA's defense of its haphazard decision-making cannot support its removal decisions. In a rush to "quickly implement[]" demands from the new administration and the Department of Government Efficiency, USDA ordered its staff to "archive or unpublish any landing pages focused on climate change"—irrespective of any other criteria—and then took a mere two days to review "all [other USDA webpages] with climate content." Mabry Decl. ¶¶ 11–13. USDA apparently decided to remove content if it was "inextricably linked to the prior administration," "considered political," or related to "funding programs that are currently frozen." *Id*. ¶¶ 14, 18. USDA also claims it "preserv[ed] research-related materials." *Id*. ¶ 14.

This is not "reasoned decisionmaking." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020). Notably, despite USDA's claim that it preserved webpages relating to research and active funding opportunities, in fact, USDA removed multiple webpages falling within those categories without any justification. *See, e.g.*, Rose Decl. ¶¶ 10–13 (describing now-removed Climate Risk Viewer); Craig Decl. ¶ 9 (describing webpages about currently available farm loans). Similarly, USDA does not explain why it removed climate-change-focused landing pages without any further review. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("[W]here the agency has failed to provide even [a] minimal level of analysis, its action is arbitrary and capricious . . . ."). It does not explain how it determined whether other climate-related webpages were "inextricably linked to the prior administration," "political," or related to "programs that are currently frozen"—nor does it explain why it would be reasonable to remove

webpages solely on these grounds. *Cf. Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 261 (S.D.N.Y. 2020) (holding decision-making unreasoned where an agency "fails to provide any standard or guidance" for its review). And it does not explain how a hurried two-day review of hundreds of webpages was likely to yield decision-making sufficiently attentive to the public interest in USDA's digital resources. *Cf*. H.R. Rep. No. 104-37, at 46 (explaining that the PRA mandates adequate notice "to maximize the ability of the public to influence agency information plans at an early stage."). USDA's climate-change-focused webpage removals were thus arbitrary and capricious.

### III.     The balance of equities and public interest favor Plaintiffs.

USDA's arguments on the third and fourth preliminary injunction factors miss the mark, ignoring Plaintiffs' interests while aggrandizing USDA's.

An injunction would not burden USDA. An agency "cannot suffer any harm from an injunction that terminates an unlawful practice." *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018). And even if it could, USDA's own declarant makes clear that restoring the purged webpages would be easy. Mabry Decl. ¶ 21 (explaining that the webpages "remain[] available to USDA staff and can be restored").

Casting about for *some* harm, USDA argues that an injunction would prevent it from "directly communicating the President's policies" online. USDA Br. 22. But the injunction Plaintiffs seek would not prevent USDA from publishing new webpages communicating new policies, nor would it prevent USDA from taking down or modifying webpages, so long as it complies with the APA and the PRA. *See Drs. for Am.*, 2025 WL 452707, at *10 (rejecting the "suggest[ion] that restoring public access would . . . interfere with the agencies' ongoing efforts

10

to conform those resources with the President's executive orders"). Instead, it would only undo USDA's rushed and unreasoned purge of climate-change-focused webpages.

On the other side of the ledger, which USDA fails to even address, denying preliminary relief would leave Plaintiffs without access to information that they urgently need—to engage in advocacy, protect their funding, and make time-sensitive decisions—for the duration of this litigation. *See supra* Section I. The balance of the equities and public interest therefore tip decisively in Plaintiffs' favor.

## IV. USDA's bond request should be denied.

In a footnote, USDA asks the Court to impose a $10,000 bond if it grants a preliminary injunction. USDA Br. 23 n.5. This unusual request conjures a bond amount from thin air, breaks with longstanding practice, and appears designed to chill Plaintiffs and other public-interest litigants from pursuing preliminary relief.[5]

The Court should exercise its "wide discretion" to waive Rule 65(c)'s bond requirement. *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961); *see also, e.g.*, *Pharm. Soc. of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1175 (2d Cir. 1995) (concluding that "the district court's waiver of the bond requirement was proper" because the litigation was brought to vindicate the public interest); *Hartford Courant Co. v. Carroll*, 474 F. Supp. 3d 483, 508 (D. Conn. 2020), *aff'd*, 986 F.3d 211 (2d Cir. 2021); *Nat'l Council of Nonprofits v. OMB*, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025). USDA has offered no reason to depart from this

---

[5] The only citation USDA can muster in support of its request is a recent White House memorandum, which makes plain that large bond requests are meant to deter litigation adverse to the administration's priorities. *See Memorandum Re: Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)*, The White House (Mar. 11, 2025), https://perma.cc/T27W-E8BG (accusing "activist organizations" and "activist judges" of "undermining the democratic process").

11

longstanding practice. It fails to justify its $10,000 demand based on any likely harm, perhaps because its declarant makes clear that compliance with a preliminary injunction would not be burdensome in the slightest. *See* Mabry Decl. ¶ 21; *see Ferguson*, 288 F.2d at 675 ("[I]t has been held proper for the court to require no bond where there has been no proof of likelihood of harm."). And this sum would be significant to Plaintiffs, all three of which are nonprofits and one of which is already suffering financially from the effects of the Trump administration's funding freeze. *See* Craig Decl. ¶¶ 2, 6. The Court should therefore waive the bond requirement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant a preliminary injunction ordering restoration of all webpages that were removed pursuant to USDA's January 30, 2025, directive and enjoining USDA from removing or substantially modifying additional webpages pursuant to that directive.

Dated: April 7, 2025

Respectfully submitted,

_____
Jeffrey Stein (5791199)
Peter Lehner (PL2290)
Earthjustice
48 Wall Street, 15th Floor
New York, New York 10005
(212) 845-7376
jstein@earthjustice.org

Carrie Apfel (4401790)
Earthjustice
1001 G St. NW, Ste. 1000
Washington, D.C. 20001
(202) 667-4500
capfel@earthjustice.org

        Stephanie Krent (5535414)
        Jackson Busch (6051668)
        Alex Abdo (AA0527)
        Knight First Amendment Institute at Columbia
          University
        475 Riverside Drive, Suite 302
        New York, NY 10115
        (646) 745-8500
        stephanie.krent@knightcolumbia.org

        *Counsel for Plaintiffs*

## Certificate of Compliance

As required by this Court's Rule II(B)(2), I certify that this memorandum of law contains 3,489 words, excluding the caption, table of contents, table of authorities, and signature blocks.

Dated: April 7, 2025                                         Respectfully submitted,

                                                                              */s/ Jeffrey Stein*